[Civ. No. 19857.   Second Dist., Div. Three.   Feb. 9, 1954.]

GARRY EUGENE SUMMERS, a Minor, etc. et al., Appellants, v. ELMER RANDALL et al., Respondents.

114

Howard C. Velpmen for Appellants.

Charles H. Lynch and Arthur M. Reilly for Respondents.

SHINN, P. J.—In this action for the wrongful death of plaintiffs' mother, Katherine Louise Summers, judgment after verdict was rendered in favor of defendants, and plaintiffs appeal.

The accident which resulted in the death of Mrs. Summers occurred at about 3 a. m. on United States Highway 101 about 15 miles south of Oxnard when Mrs. Summers was struck by a truck-trailer combination owned by Elmer Randall and driven by Wesley McGhee. We shall refer to the latter as defendant.

Looking north from this point the highway curves to the east. A vehicle traveling south would become visible from the scene of the accident when it was some 400 feet away. The east side of the roadway lay against a cliff; on the west was a 6-foot shoulder, beyond which the land descended steeply toward the ocean. The roadway consisted of three marked lanes. Shortly before the accident Mrs. Summers was riding on the right side of the front seat of ·a two-door Chevrolet sedan being driven by one Richard Berry northwards towards

Oxnard. One Charlene Metcalf occupied the center of the front seat. In the rear seat were three soldiers whom Berry had picked up along the highway. While attempting to pass another northbound vehicle Berry lost control of his car which skidded and came to rest in the middle of the westerly, or southbound lane, facing northeast, with the engine stalled. The lights of the vehicle were extinguished. Berry busied himself by trying to start the engine. Defendant Randall's tractor and trailer, driven by his employee, defendant McGhee, entered the north end of the curve, traveling south in the westerly lane. The tractor and trailer rig was 50 to 60 feet in length, and was fully loaded. There was no evidence as to the mechanical condition of the equipment. McGhee was familiar with this portion of the highway. As he rounded the curve his headlights reflected some object in the westerly lane. At this point he was about 400 feet from the Berry car. He immediately switched the headlights to high beam, enabling himself to recognize the object as an automobile, and almost simultaneously began to guide the truck and trailer into the center passing lane, at the same time applying the brakes lightly. At about the same time he observed that there were people in the Chevrolet. He also observed another car coming north more than 800 feet from him. When he reached a point about 200 feet from the Chevrolet he had brought the tractor and trailer fully into the center lane and had slowed to between 15 and 20 miles per hour. Then he saw women get out of the Chevrolet, run into the center lane and stop there. At the same time he observed that a car was coming north in the northbound lane 500 or 600 feet from him. When he observed the women in the center lane he began to guide the tractor and trailer back to his right into the west lane. At the same time he momentarily increased the pressure on the brakes intending to proceed and run into the car, but he immediately released all pressure and did not thereafter apply the brakes for the reason that he observed there were people remaining in the Chevrolet, which caused him to head the tractor and trailer farther to the right in an effort to pass to the right of the car. The left front, or driving wheel, of the tractor collided with the left rear portion of the car. As the tractor came abreast of the Chevrolet McGhee saw a soldier run west across the path of the truck and dive off the roadway. He also saw ''someone else'' running in the same direction as the soldier. Immediately after the drive wheel of the tractor collided with the car McGhee heard a thud, which

may have been caused by a body being struck by the tractor. McGhee brought the tractor and trailer to a stop 500 or 600 feet south of the point of impact. When officers of the Highway Patrol arrived, the car was standing about 12 feet south of its original position. Mrs. Summers lay beneath the car, between the wheels, and a sergeant was lying on the west shoulder of the highway about 50 feet south of the car. Until the collision occurred Berry had remained in the car trying to start the motor. It is not clear how many of the passengers remained in the car. It may fairly be inferred that at least three passengers, including Mrs. Summers, alighted from the car and attempted to reach a place of safety. McGhee gave testimony as to his actions, as related above, and also testimony tending to show that the trailer was swaying and that it was possible that an attempt to stop the truck and trailer within 200 feet would have caused it to capsize. He also testified that he could have stopped the truck and trailer within 100 feet at 15 miles per hour and within 200 feet at 40 miles per hour, and that at 15 miles per hour with the trailer loaded, as it was at the time, he could move from one lane to another and stop the equipment if he had to.

There was a minimum of evidence as to the circumstances of the accident. Of the six persons who were in the car only Berry appeared as a witness, and he displayed amazing ignorance of what had happened. He did not know on which side of the car the truck passed, or who got out of the car, or when anyone left it. There was no evidence as to the time the car remained in the west lane before the truck appeared. There was no testimony as to the movements of the truck, and the conduct of McGhee, other than that of McGhee.

The only ground of appeal which requires decision is the claim that the court erred in refusing to give an instruction requested by plaintiffs on the doctrine of last clear chance. In its refusal to give the requested instruction the court decided there was not substantial evidence from which the jury could find the existence of the factual elements of the doctrine which are: " 'That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and has the last clear chance to

avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' " (*Daniels* v. *City & County of San Francisco*, 40 Cal. 2d 614, 619 [255 P.2d 785].)

In deciding whether we agree with the trial court as to the legal sufficiency of the evidence to support affirmative findings upon the above issues, had such findings been made, we should view the evidence in the light most favorable to the application of the doctrine, and indulge in every reasonable inference in support thereof. (40 Cal.2d 614, *supra.*)

Had Mrs. Summers remained in the car it could have been argued that she was guilty of negligence in doing so, but, since she left it, the question as to the first element of the rule, namely, whether she was in a position of danger through her negligence, was related to her having left the car and taken up a position in the middle lane of traffic. As it turned out, she would have been safer if she had remained in the car, which was a circumstance for a jury to consider in deciding whether she was negligent in alighting onto the middle lane of traffic. It could have been inferred that she left the car after observing defendant's truck approaching. As it was approaching at 40 miles per hour Mrs. Summers had mere seconds in which to act. Either course she chose was fraught with danger. Unless we can assert, dogmatically, that any reasonably prudent person would have left the car, as Mrs. Summers did, we cannot say that a finding of negligence on her part would have been unreasonable. It was a factual question for the jury whether it was the part of prudence for her to leave the car, which the truck driver would probably endeavor to avoid, and to step out into the middle lane, which would be the natural course for him to take. A jury would not be compelled to find that she exercised ordinary care. We conclude, therefore, that the evidence was sufficient to establish the first element of the last clear chance doctrine.

The next element of the rule relates to the ability of Mrs. Summers to extricate herself from her position of danger in the exercise of ordinary care. It is no answer to say that if she had stood still in the highway she would not have been injured. That would have been a most extraordinary, if not foolish, thing for her to do. Ordinary prudence would not have suggested to one in her position that there was no need to leave it. The plain inference is that Mrs. Summers acted promptly and with good judgment in making an effort to

escape injury. And yet she failed. She ran behind the car. Perhaps she went a little beyond it, and was struck by the truck. Or it may be that she was struck by the car, which was moved some 12 feet by the collision. She had to act impulsively, and we do not see how she could have known which way the defendant would go when he, himself, turned first one way and then another. It is clear to us that had the question been submitted to the jury a finding that Mrs. Summers could not have escaped from her danger in the exercise of ordinary care would have been a reasonable deduction from the evidence and the reasonable inferences.

Our views are the same with respect to the next element, namely, whether it would have been reasonable to conclude that defendant knew, or in the exercise of ordinary care, would have known that Mrs. Summers could not, in the exercise of ordinary care, extricate herself from her position of danger. Defendant first intended to travel the middle lane, then he decided to run into the car, but when he saw someone in it he decided to pass to the right of it. Whatever there was to be known as to the danger Mrs. Summers was in, and her ability to escape from it, was known to the defendant. It could even be said that since he knew he was not going to stop his truck his knowledge of the situation was superior to that of any of the occupants of the car. Inasmuch as we hold that the jury would have had reasonable grounds for believing that defendant's intention to pass by the car without stopping, or attempting to stop, made Mrs. Summers' position on the highway one of danger, from which she could not escape in the exercise of ordinary care, it follows that it would also have been reasonable for them to conclude that defendant knew, or, in the exercise of ordinary care, should have known that fact.

The next question is whether defendant, with the knowledge last mentioned, could have stopped his truck before it reached the car, or otherwise have avoided the accident. His own testimony was sufficient to warrant a finding that in the exercise of ordinary care he could have stopped his truck in the space he had. His excuse for not stopping was that his equipment was heavily loaded, and he feared a sudden stop would be likely to overturn the trailer. This testimony did not prove that he could not have stopped. It was only something to be considered with his testimony that at 40 miles per hour he could have stopped in 200 feet, and at 15 or 20 miles per hour he could have stopped in 100 feet. It was

undisputed that he could have stopped his truck after he saw the car and people in it.

Whether McGhee had the last chance but also a *clear* chance to avoid the accident depends not so much upon his ability to stop his truck as upon the findings which we hold could have been made upon the other elements of the doctrine. When he was 200 feet away from the car he decided he should leave the middle lane because he saw people standing there. It would have been reasonable for a jury to conclude that he believed at that time that it was necessary to either stop or turn aside, and that he had ample opportunity to stop. There was therefore evidence that defendant had the last clear chance to avoid the accident in the exercise of ordinary care sufficient to support a finding to that effect.

It was clearly a question for the jury whether defendant exercised ordinary care in endeavoring to go around the car, instead of coming to a stop.

▆ It follows from the views hereinabove expressed that the failure of the court to instruct on the doctrine of last clear chance was prejudicial error. ▆ Where there is substantial evidence to support a recovery upon a theory of liability advanced by a plaintiff instructions must be given on that theory. (*Stickel* v. *Durfee*, 88 Cal.App.2d 402 [199 P.2d 16].)

The principles of the last clear chance doctrine have long since been settled by the decisions, and are well known to all informed lawyers. To extend this opinion into a discussion of the manner in which the doctrine has been applied or refused application in other factual situations would be an idle act. ▆ In final analysis the question always is whether there was substantial evidence of facts which would warrant application of the doctrine in a manner that would be likely to affect the verdict on the issue of liability. This, in our opinion, is clearly a case in which there was evidence which required the court to give the instruction requested by plaintiffs. And this is true even though it might be equally reasonable to conclude from the evidence that the elements of the last clear chance doctrine had not been established. It is unnecessary to consider a further claimed error in the refusal of another instruction requested by plaintiffs.

The judgment is reversed. The purported appeal from the order denying motion for new trial is dismissed.

Wood (Parker), J., and Vallée, J., concurred.