[Civ. No. 11564.   Third Dist.   June 27, 1968.]

GEORGE W. GILLINGHAM, Plaintiff and Respondent, v. GREYHOUND CORPORATION, Defendant and Appellant.

Carroll, Davis, Burdick & McDonough and Gerald P. Martin, Jr., for Defendant and Appellant.

Simonelli & Fransen and Peter J. Simonelli for Plaintiff and Respondent.

BRAY, J.*—In a personal injury action, Western Greyhound Lines, corporation, appeals from an order granting a new trial against Greyhound alone, after a jury had found in favor of all the defendants.

### QUESTION PRESENTED

Should plaintiff's proferred instruction on last clear chance have been given?

### RECORD

On a dark October night, a vehicle driven by Joseph Aiello struck plaintiff who was jaywalking across Highway 99, a major interstate thoroughfare, just north of the city limits of Lodi. Within seconds thereafter, a Greyhound bus driven by Harold Holston straddled the plaintiff's motionless body and may have struck the body.

Plaintiff brought this action against Greyhound, its driver Holston, and Aiello for damages for the injuries sustained by him. At the trial, plaintiff proferred a last clear chance instruction which the court refused to give. The jury found in favor of all defendants.

On motion for new trial, the trial court found that, although ". . . it is unlikely that the jury would have come to a different verdict even if the last clear chance instruction had been given," there was substantial evidence that required that such instruction be given and that the court erred in not giving it.

### LAST CLEAR CHANCE

■ In determining whether the last clear chance instruction should have been given, we must indulge in the presumption that the trial court obeyed this mandate of the Constitution that the trial judge shall not grant a new trial because of errors in instructions to the jury until he has reexamined the entire case and shall have formed his opinion that the errors complained of have resulted in a miscarriage of justice. (*Lasch* v. *Edgar* (1941) 46 Cal.App.2d 726, 730 [116 P.2d 949].) The same rule applies to the failure to give a proper instruction.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

(*Selinsky* v. *Olsen* (1951) 38 Cal.2d 102, 103 [237 P.2d 645].)
■ "... Each party is entitled to have his theory of the case submitted to the jury in accordance with the pleadings and proof, ... and it is imcumbent upon the trial court to instruct on all vital issues involved. ...." (*Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795].) ■ We must view the evidence in the light " 'most favorable to the contention that the [last clear chance] doctrine is applicable ... since plaintiff is entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine.' " (*Sills* v. *Los Angeles Transit Lines, supra,* at p. 633.)

We examine the evidence in the light of the above rules and attempt to find that most favorable to the last clear chance doctrine.

The accident occurred October 20, 1963, at approximately 10 p.m. on a dark, clear night. It occurred at a point on Highway 99 where there are two northbound and two southbound lanes, approximately 100 feet north of Murray Road, the northern boundary of Lodi city limits. The speed limits on Highway 99 were 45 miles per hour north of Murray Road and 35 miles per hour south thereof. Plaintiff was crossing the highway from east to west towards a well lighted gasoline station in a shopping or business area. Aiello was driving his Edsel automobile in the left-hand or fast lane of southbound traffic next to the double line at a speed of approximately 25 miles per hour. Neither he nor his wife, who was a passenger in the car, saw plaintiff. Therefore, Aiello did not apply his brakes. After impact, plaintiff came over the hood and rolled off the left fender, landing inside or west of the double line,[1] and approximately 75 to 100 feet from where he was hit.

Holston, the bus driver, testified that he was driving approximately 100 feet behind the Aiello car. Mrs. Hensel corroborated this. Holston said that whereas the Shell station on the west side of the highway was lighted, there was no light on the east side and the fast southbound lane of traffic was dark. The intersection of Murray Road and Highway 99 was described by the investigating police officer as a "darkened intersection." He also testified that the service station lights cast no light on the highway since they were directed to shine on the station. In addition, Mrs. Hensel, in a car coming out of the Shell station, testified that the road was dark at the point where plaintiff's body was lying.

---

[1] There was evidence that plaintiff was intoxicated.

The Scenicruiser being driven by Holston was equipped with air suspension and air brakes. The brakes and the headlights which cast a beam 100 feet ahead were operating properly. Three-quarters of a mile north of the scene of the accident there was one vehicle ahead of the Greyhound (the Aiello car) about 100 feet. The bus was in the right-hand southbound lane. The driver had slowed to a speed of 25 to 35 miles per hour, for he knew he was entering the city limits and was coming to a 35-mile zone. When, approximately 75 feet from the point where he straddled the plaintiff's body, he saw brake lights from the car ahead, and assumed that the car was going into the service station or the motel beyond it. He looked to see if he had clearance in the left lane, put his foot on the brake without depressing it, and went into the left lane to get out of the right lane which the car would use in gaining entrance to the service station or motel. He did not apply his brakes at this time. He merely "tipped" them for the purpose of getting "air to the wheels," should it become necessary to use the brakes.

After traveling in the left lane for 75 feet, he suddenly saw plaintiff's body lying on the highway a distance of 25 to 30 feet away. "[I]t looked like a bundle of rags and then all at once I seen a pair of shoes and this was the first that I realized that it was a body." "I had about twenty-five or thirty feet of decision, this way or this way. . . ." There was a vehicle stopped in the right lane. He did not know if this was Aiello's car. He saw headlights approaching him from the opposite direction. "[T]he only opening I had was to straddle this body." He immediately applied his brakes. However, when he started to pass over the body, he took his foot off the brakes because he could not stop the bus in time and he was afraid that if he skidded he would cause his rear wheels to catch the body. Also by not releasing the brakes, it would cause the front of the bus to lift up. There was room for his left rear duals to pass between the body and the double line. He believed he successfully straddled the body. Both Aiello and Mrs. Hensel thought so too.

The driver testified that at 25 or 30 miles per hour the bus would travel about 50 feet before he could stop it. His testimony was that he saw the bundle of rags at a distance of 25 to 30 feet away from the point of impact. He did not give the distance he was away when he saw the shoes and realized that it was a body but it was "all at once." From the driver's testimony, the last clear chance doctrine would not apply except on the theory that the jury could have refused to

believe his testimony and could have concluded that he actually saw the body and realized, or should have realized, that it was a body, at a distance far enough away for him to have been able to stop without hitting it.

■ *Brandelius* v. *City & County of San Francisco* (1957) 47 Cal.2d 729 [306 P.2d 432], states that the last clear chance doctrine may be invoked only when: (1) The plaintiff by his own negligence has put himself in a helpless position (This situation existed in the instant case.) (2) The defendant *knew* that plaintiff was in a position of helpless peril; (3) The defendant thereafter had a last clear chance to avoid the accident—not a mere possible chance. If the driver's testimony is believed, the third requirement was not met.

Under the old rule in California, an appellate court's duty in deciding an appeal from a trial court's order of new trial for alleged error in refusing an instruction was to determine (1) was there such error? and (2) if so, was the error prejudicial? (See *Lasch* v. *Edgar, supra,* 46 Cal.App.2d at p. 730.)

■ Now, however, the rules concerning review of the granting of a new trial for alleged error seem to eliminate the second requirement above and the only determination to be made by this court is whether there was error in refusal to give the instruction. If there was such error, the question of prejudice in not giving the instruction is not to be considered; that matter is deemed to have been determined by the judge at the trial.

In *Malkasian* v. *Irwin* (1964) 61 Cal.2d 738 [40 Cal.Rptr. 78, 294 P.2d 822], which upheld an order granting a new trial for error occurring at the trial, the court said (pages 747-749):

". . . The trial court's discretion should be upheld even where the error was a minor or debatable one. *There is no necessity of showing prejudice in such a case.* In the instant case, even if the challenged argument [which the trial court was held to have erroneously permitted] were only debatably erroneous, the trial court's discretion in granting the new trial cannot be disturbed.

". . . . . . . . . . . . . .

"Thus the question is not whether the challenged argument was prejudicially erroneous, but whether it was sufficiently misleading so that the trial court that had seen and heard the witnesses could find that it was improper. If that point is even reasonably debatable, the discretion of the trial court cannot be disturbed.

"`. . . . . . . . . . . . . . . . . ..`

". . . We have before us an error, minor it is true, but an error nevertheless. . . . As long as there is any possible ground to sustain the order we should do so, even if that ground is only a debatable one. . . ." [Italics ours.]

Thus, our duty is to determine whether there is any substantial evidence to support an inference that the bus driver had the last clear chance to avoid the accident. This in turn depends upon whether there was any evidence to the contrary to the driver's testimony which would justify an inference that he saw the plaintiff's body in time.

While the jury could refuse to believe the driver's testimony that he saw the "bundle of rags" or the body too late to stop, it would then have to find that he actually did see it in time—not that he should have so seen it, because his failure to do so would only be negligence—but that he actually saw it. As said in *Lasch, supra,* at page 729, quoting from *Rasmussen* v. *Fresno Traction Co.* (1936) 15 Cal.App.2d 356 [59 P.2d 617], " '. . . the doctrine of the last clear chance means exactly what the words imply and the essence of the rule is that it is applicable only where the defendant . . . has a clear chance, *after realizing that the plaintiff cannot escape,* to avoid the accident. . . .'

" '. . . While it has always been held that the rule did not apply unless the defendant actually knew that the plaintiff was in a position of danger it has more recently been held that the jury is not required to take the defendant's word that he did not see but that, under proper circumstances, the jury may find that he did see, and that the jury, having found on proper evidence that he actually saw, may infer that he should then have known that the plaintiff could not escape.' " (Italics added.)

A study of the evidence reveals that assuming the jury had disregarded the driver's testimony there is no evidence upon which it could have determined that he actually did see the body in time to have stopped, and any finding that he did "must rest more upon the whim or prejudice of a jury than upon the actual facts shown by the evidence." (*Rasmussen* v. *Fresno Traction Co., supra,* at p. 362.)

Here the bus was following Aiello's car about 100 feet behind. The bus' low beam lights threw a light ahead about 100 feet. The car struck plaintiff and carried him on its hood 75 or 100 feet before it dropped him to the pavement. The highway was dark. The jury cannot say without guessing that

the lights would have shown the "bundle of rags" at any particular distance before the 25 or 30 feet testified to by the driver or showing it as a body at any particular distance.

The trial court relied on *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, where the granting of a new trial for failure to give an instruction on last clear chance was upheld. In that case, the reviewing court said:

". . . It is true that defendant testified that he did not see plaintiff's car until he was directly behind it, when plaintiff drove his car into the line of traffic in front of him, . . . Other evidence shows, however, that defendant was looking straight ahead as he approached plaintiff's car and his view was unobstructed. It may be inferred therefrom that he saw plaintiff's motionless car extending into the line of traffic." (P. 105.) The defendant testified "that he was looking straight ahead and could have seen a car protruding as plaintiff's did for a distance of 50 feet to the south of it; . . ." (P. 104.) The defendant gave no reason for not seeing what was in plain sight. In the case at bench, because of the dark night, the dark highway, and the other circumstances, there is no evidence from which the jury could reasonably infer that the driver saw the body on the highway before he said he did.

█ It must be remembered that to apply last clear chance "actual knowledge of plaintiff's position of danger is required, but constructive knowledge of his inability to escape will suffice." (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 742.)

The trial court in its order granting new trial misstated the evidence in two respects: (1) that the driver testified that when he was further than 35 feet from the body on the pavement he saw the "bundle of rags." There was no such testimony. Holston said that he saw the "bundle of rags" 25 to 30 feet from the point of impact and "then all at once" he saw a pair of shoes. (2) "There was some light cast on the highway from a nearby service station." As hereinabove shown, there was no light cast on the highway from the service station. The court concluded that, "The jury could reasonably find *from the total circumstances* that [the driver] *could and did*" see and recognize the bundle of rags further than 30 feet ahead. (Italics added.)

█ The trial court evidently erred in considering that last clear chance applies if the jury were to find that the driver *could have seen* the body on the road rather than that

he did see it. No circumstance is set forth other than that the bus lights lighted the highway 100 feet ahead. Concerning the driver's statement that he could stop his bus within 50 feet, the court said it "seems ridiculously short." Although the court granted the new trial, it did not find that the failure to give the instruction was prejudicial. The court summed up the matter, ". . . This whole unfortunate denouement has an artificial quality in that (a) there is probably something wrong with the stopping distance testimony, and in view of plaintiff's drinking, his folly in crossing the four lane highway at night in that location, and the unexpected and unlikely occurrence of coming upon a motionless body in the middle of the highway, it is unlikely the jury would have come to a different verdict even if the last clear chance instruction had been given."

Plaintiff contends that Holston testified that he saw the body 100 feet away. This contention is based upon what was clearly a misunderstanding by Holston of the question asked him. The transcript shows a question by plaintiff's counsel:

"Q.Now, Mr. Holston, how far away from the body were you when you first saw it? A. I would say about 75 feet to 100, to 75 feet. Q. You saw the body? A. I'm sorry, 25 to 30 feet."

Officer Barkley testified that the intersection was "dark, no street lights," and that the service station lights did not cast any light on the highway, as they were focused to shine on the station.

Mrs. Hensel, who was in a car just about to leave the service station, testified that the road was dark, that the lighting was on the service station, that the lights "shoot at the station, so the road was not lit at that point." She spotted a man stooping down on the highway; she "wondered what he was doing out there in the dark, because he had dark clothing on," then "the car hit him." Based on Mrs. Hensel's statement that she saw the car hit and throw him onto the hood, where he disappeared and then some 75 feet down the highway saw his feet under the bus which was straddling him, this time from the position her husband had placed his car so that his headlights would shine onto the highway, plaintiff contends that the jury could infer that Holston saw plaintiff before he said he did. This would be purely a guess because, obviously, the Aiello car would block Holston's view of plaintiff until plaintiff fell off the car's hood some 75 to 100 feet down the road, at which time Holston was watching Aiello's

car lights which were turning towards the side of the road. Moreover, Holston was then changing lanes to let the car clear the right lane in which Holston was driving and his lights would not necessarily show up the body until he got into the left lane. It is clear that after Holston saw the body, he had no choice but to straddle it. He could not turn left into the oncoming lanes to be hit by approaching traffic, nor could he turn off the highway and hit either the trucks which were parked in front of the service station or the Aiello car which was crossing the highway.

As to the distance the Greyhound was behind the Aiello car at the time the latter struck plaintiff, there was no testimony other than that it was approximately 75 to 100 feet. Both Holston and Mrs. Hensel so testified. Neither of the Aiellos saw the bus behind them. Although they knew that there was traffic behind them, after hitting plaintiff, Aiello drove off the highway and stopped. In his deposition he estimated that the bus did not straddle plaintiff's body until five minutes after Aiello hit plaintiff. At the trial, he finally said that it was about one minute. Plaintiff places great stress upon this testimony as proving that both Mrs. Hensel and Holston were wrong in testifying that the bus was 75 to 100 feet behind Aiello. Obviously, Aiello's estimate of time was way off. Traveling at 25 to 30 miles an hour, if the bus was one minute in time behind the car, it would have been over 2,000 feet behind Aiello at the time he struck plaintiff. Mrs. Aiello testified that as soon as her husband stopped the car, she alighted and started to plaintiff's assistance and it was then that the bus passed her. Assuming, however, that the bus was following at a distance further than Mrs. Hensel and Holston testified, there is still no evidence from which the jury could find, not that Holston might or could have seen, but that he actually saw the body in time to stop.

Particularly is this so when it is remembered that both Mr. and Mrs. Aiello failed to see plaintiff who was either erect or stooping when hit, and hence was a much larger target than when lying on the highway.

The most recent case on last clear chance is not in point. In *Lauder* v. *Jobe*, 261 Cal.App.2d 539 [68 Cal.Rptr 63], a metal box fell off a truck onto the highway. The truck stopped on the highway so that the driver could pick up the box. While there, plaintiff Lauder's Impala rear-ended the truck. Defendant Jobe's car then struck the rear end of the Impala.

At trial of the action brought by Lauder against Jobe for injuries received by the former in the accident, the court instructed on last clear chance. On appeal from the judgment after jury verdict in favor of plaintiff Lauder, Jobe contended that there was no evidence to support a finding of last clear chance and therefore, that it was error to instruct on that doctrine. Jobe contended that the two collisions occurred too closely in time to warrant a finding that he had a clear chance to avoid striking Lauder's Impala. The reviewing court held that under the evidence there was no error in instructing on last clear chance. The court pointed out that although the evidence was conflicting concerning the time elapsing between the time of the striking of the truck by the Impala and the striking of the Impala by Jobe's car, Lauder testified that 6 seconds had elapsed. Jobe testified that he was going 60 miles per hour. The roadway was straight and unobstructed and apparently it was daylight. Going at that speed, the court stated, Jobe's automobile would have traveled approximately 540 feet; "that the defendant would have a wide, paved, unobstructed area in which to avoid the stopped vehicles." (*Lauder* v. *Jobe, supra,* at p. 545.) There was also testimony to the effect that Jobe saw the Lauder vehicle strike the truck. Had there been that much time (six seconds) and the wide area in which to avoid the stopped vehicles, he [Jobe] would have had that clear chance to avoid the accident. It was, therefore, proper to submit the issue to the jury.

It is obvious that the time element, the conditions for observation and the obstructed area in the case at bench preclude the application of *Lauder* to the facts of the case at bench.

Since there was no evidence which would have supported a finding by the jury of last clear chance, the court did not err in refusing to instruct thereon but did err in granting a new trial for failing to give such instruction.

The order granting new trial is reversed as to defendant The Greyhound Corporation.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied July 25, 1968.