[Civ. No. 34000.   Second Dist., Div. Two.   Oct. 10, 1969]

JERRY E. SPANN, a Minor, etc., Plaintiff and Appellant, v. ROBERT L. BALLESTY, a Minor, etc., Defendant and Respondent.

John D. Miller, Norvell F. Woods, Jr., and Fred Miller for Plaintiff and Appellant.

Thomas Moore and Albert E. Nelson for Defendant and Respondent.

WRIGHT, J.—Plaintiff appeals from a judgment in favor of defendant in an action or damages for personal injuries.

The accident occurred on the afternoon of November 16, 1965, at the intersection of Orange Avenue and Phillips Street in the City of Long Beach. Phillips is an east-west street, 30 feet wide. It forms a "T" at the intersection and does not continue westerly from Orange. Orange is a through street and Phillips is controlled by a stop sign. Orange runs north and south and is 60 feet wide; it has a parking lane and two lanes for moving traffic in each direction; there are double yellow dividing lines in the center of the street; and there is a marked crosswalk 12 feet wide which runs east and west across the street. When the accident occurred, plaintiff was crossing Orange in a westerly direction from the southeast corner of Phillips, and defendant was proceeding south on Orange.

Plaintiff, a nine-year-old boy, was on his way home from school at the time of the accident. Although the school was located in the vicinity of the accident scene, the intersection of Phillips and Orange was not posted as a school zone and there were no crossing guards there. Defendant had previously lived only a few blocks from this intersection for many years. He was aware that small children on their way to and from school crossed Orange at Phillips frequently, and he knew that the intersection had a marked crosswalk.

It was raining at the time of the accident. Witnesses described the rain as "sprinkling," "medium rain," and "raining hard."

Plaintiff and four other children were running and chasing each other as they approached the intersection. Three of the children had already crossed the street when plaintiff arrived at the curb. Plaintiff's testimony was that he stopped at the corner, looked both ways, did not see any cars, and proceeded into the crosswalk. At plaintiff's deposition, he said he was running as he crossed the street. At trial he testified that he was mistaken at his deposition and that he walked across the street. One of the children who had already crossed the street testified that plaintiff entered the crossing at a "slow trot, close to a walk." A second child who had already crossed the street was the only witness who observed plaintiff continuously from the time he left the curb until he was struck by

defendant's car. This second child testified that plaintiff was walking the entire time he was in the crosswalk. Defendant and his father, a passenger in the car, both testified that plaintiff was running when they first saw him.

Defendant's car entered the intersection from the north, which was to plaintiff's right. Plaintiff was looking either straight ahead or to his left, and not in the direction of the car. Plaintiff did not look and see the car until it was only a few feet from him. Plaintiff immediately stopped, was unable to move, and was standing still when he was struck. He was still in the crosswalk at that time. At the point of impact, plaintiff had already crossed 43 feet of 60-foot wide Orange Avenue.

Defendant's approach to the intersection was a straight line. There was no evidence of any other vehicles on the street. Defendant estimated the speed of his car at 20 to 25 miles per hour. Defendant's father was the first one to observe plaintiff and he shouted a warning to his son. Defendant testified that when he first saw plaintiff, plaintiff was just past the middle of Orange Avenue and 20 to 25 feet ahead of the car. Defendant immediately applied his brakes, whereupon the wheels of the car locked and he slid into the plaintiff.

Defendant testified that he was looking straight ahead at all times and concentrating on his driving, yet he could offer no explaination as to why he did not see plaintiff sooner. Defendant's testimony was equivocal as to whether his windows were fogged up on the inside and whether he could see out of the left-hand window. Defendant also testified that he did not see any of the other children who immediately preceded plaintiff through the intersection.

Plaintiff's principal contentions on this appeal are: (1) that the trial court committed prejudicial error in refusing to instruct the jury on the doctrine of last clear chance; and (2) that it was prejudicial error for the court to give an instruction which included section 21950 subdivision (b) of the Vehicle Code. In light of our decision on these issues, it is not necessary to discuss plaintiff's claims of additional errors in the instructions given and refused.

## Last Clear Chance

■ To justify invoking the doctrine of last clear chance, the trier of facts must be able to find from the evidence: "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically im-

possible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.'' (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432].)

Whether the elements essential to the last clear chance doctrine exist is controlled by the factual circumstances of each case, and in determining, on appeal, whether an instruction on last clear chance should have been given, the evidence must be viewed in the light most favorable to the application of the doctrine, including every reasonable inference in support thereof. (*Philo* v. *Lancia*, 256 Cal.App.2d 475 [63 Cal Rptr. 900].) An instruction on last clear chance must be given whenever there is substantial evidence tending to establish each of its elements, even though the evidence may be conflicting, and even though it may be equally reasonable to conclude from the evidence that the elements of the doctrine have not been established. (*Summers* v. *Randall*, 123 Cal.App. 2d 113, 119 [266 P.2d 217].)

Upon examination of the facts of the instant case in light of the above rules, we feel the jury could reasonably have inferred that each of the elements of the doctrine of last clear chance were established by the evidence.

In regard to the first element, it could reasonably have been found as a fact that plaintiff was contributorily negligent for failure to maintain a lookout for a vehicle coming through the intersection once he had started to cross the street. (*Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, 311 [3 Cal.Rptr. 718].) The fact that plaintiff progressed 43 feet westerly of the east curb of Orange Avenue before ascertaining his danger could in itself warrant such a conclusion. In addition, plaintiff testified that he did not see the car until it was only a few feet from him. Defendant testified that plaintiff was looking either to the left or straight ahead, and was not looking in the direction of the oncoming car. Defendant also confirmed plaintiff's testimony that he did not see the car until it was practically on top of him. Because the car was so close to plaintiff by the time he realized the danger, it could readily be concluded that

plaintiff did not have enough time to extricate himself and thereby avoid injury.

The second element of last clear chance could also have been satisfied by a reasonable inference from the testimony pre- In determining the existence of this element, California follows the doctrine of ''discovered peril,'' i.e., the defendant must know that plaintiff was in a position of danger. Mere negligent failure to discover the situation or to observe the plaintiff will not satisfy this requirement. (See 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 354.) Actual knowledge, however, may be shown by either direct or circumstantial evidence, and the jury may infer, from all the circumstances, that the defendant did know of the plaintiff's danger in time to avert the accident, even though he testifies that he did not, and even though there is no other direct evidence that he did. (*Paolino* v. *City & County of San Francisco,* 72 Cal.App.2d 579, 585 [164 P.2d 916].)    It is true that defendant testified he did not observe plaintiff until he was only 20 or 25 feet away from him. He also testified that he did not see the three children who immediately preceded plaintiff across the street. Although some of the testimony was conflicting, there was evidence from which the jury could find that defendant was looking straight ahead, that he was concentrating on his driving, that there were no distractions, that defendant had an unobstructed view for at least a full block before the accident, and that plaintiff had been visible for at least two-thirds of the width of a six-lane avenue. From these facts the jury could reasonably infer that defendant must have known of the plaintiff's danger prior to the time defendant claimed to have first seen him.

The second part of this element is that defendant knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape from his position of danger.    Here the requirement is less strict, and defendant may be charged with such knowledge if a reasonably prudent person would have realized plaintiff's inability to extricate himself. (*Gillingham* v. *Greyhound Corp.,* 263 Cal.App.2d 564, 571 [69 Cal.Rptr. 728].)    Everyone who testified, including defendant himself, agreed that plaintiff was inattentive, was not watching for oncoming vehicles, was looking straight ahead or to the left, away from the direction of defendant's car, and was moving into the path of the car. Since plaintiff was completely unaware of the approaching car, the jury could have concluded that defendant knew or should

have known that plaintiff would be unable to escape from his position of danger.

The third element necessary to warrant giving an instruction on last clear chance is easily satisfied. Since it could reasonably have been inferred that defendant was actually aware of plaintiff's peril and his inability to escape for a distance considerably more than 20 to 25 feet, there were both sufficient time and distance to permit stopping the car or other reasonable action by the driver to avoid the accident.

■ We are not saying that the doctrine of last clear chance should have governed the outcome of this case. All we are saying is that viewing the evidence in the light most favorable to the application of the doctrine, including reasonable inferences in support thereof, the jury *could* have found the existence of each of the required elements. Since such findings might reasonably have been made, it was prejudicial error to refuse the instruction on last clear chance. (*Lopez* v. *Ormonde,* 58 Cal.App.2d 176, 183 [65 Cal.Rptr. 513].)

VEHICLE CODE SECTION 21950 SUBDIVISION (b)

Plaintiff further contends that it was prejudicial error for the court to give an instruction which included section 21950 subdivision (b) of the Vehicle Code.[1] We feel that under the circumstances of this case, it was not only inappropriate to give such an instruction, but was also highly prejudicial.

■ We do not believe that the Legislature intended this statute to apply to the situation presented by the instant case. When the pedestrian *suddenly* leaves his place of safety, the vehicle must be so close as to constitute an *immediate hazard.* Such wording indicates the statute was intended to apply to those situations where a pedestrian unexpectedly asserts his right-of-way in an intersection at a time when the vehicle is so close that it is virtually impossible to avoid an accident. Typical situations include when a pedestrian steps, jumps, walks or runs directly in front of a vehicle travelling in lanes which are adjacent to the curb or other place of safety occupied by the pedestrian. Under such circumstances, the vehicle would most certainly constitute an immediate hazard to the pedestrian.

---

[1] Section 21950, subdivision (b) of the Vehicle Code provides as follows: ''No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard.'' This subdivision was added to the Vehicle Code in 1965, and apparently has not yet been the subject of appellate review.

From the facts of the case before us, however, a finding that defendant's car constituted an immediate hazard to plaintiff when he left the curb would be unwarranted. The curb here was 43 feet from the point of impact. Orange Avenue was six lanes wide and plaintiff had already crossed four lanes and was in the middle of the fifth lane when he was struck. We cannot see how section 21950 subdivision (b) applies to these facts unless it is held that a car anywhere on a street constitutes an immediate hazard to a pedestrian anywhere else on the same street.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings in the light of this opinion.

Herndon, Acting P.J., and Fleming, J., concurred.

A petition for rehearing was denied November 3, 1969.