[Civ. No. 34283. Second Dist., Div. One. Feb. 11, 1970.]

ALFRED CHARLES FORWOOD, Plaintiff and Appellant, v. SCOTT HOWELL SUTTON, Defendant and Respondent.

**COUNSEL**

Elmer Low for Plaintiff and Appellant.

Allan S. Garber and L. E. Schweiner for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—Appellant, the plaintiff in a personal injury action, has appealed from an adverse judgment entered after a jury verdict for the

defendant (respondent). The sole issue raised by this appeal concerns the propriety of the action of the trial court in refusing a jury instruction tendered by appellant on the doctrine of last clear chance. The instruction as tendered is conceded to be a correct statement of the law. The only question presented is thus the existence of evidence in the record to support the giving of the instruction. In determining the presence or absence of that evidence, we are required to view the record in the light most favorable to the instruction since a party is entitled to an instruction on his theory of the case if there is evidence to support the theory. We conclude that the evidence presented to the trial court in the case at bench required that the tendered instruction on last clear chance be given. Accordingly, we reverse the judgment.

*Facts*

Stated in the light most favorable to appellant's theory of the applicability of the doctrine of last clear chance, the record discloses the following. The accident out of which the case at bench arose occurred at the juncture of the transition road from the eastbound Ventura Freeway with the southbound San Diego Freeway. The transition road is two lanes wide and the San Diego Freeway four lines in width at that point. At the junction there is a triangular area approximately 320 feet in length tapering from a width of over 20 feet at the north to a point at the south. The triangular area is marked with 8-inch chevron-shaped stripes. The area as diagrammed by the parties in the trial court, together with the lane designations employed at the trial, is as follows [See p. 346, *infra*]:

At 4:30 p.m., appellant was driving his Opel station wagon southbound on the transition road from the Ventura Freeway to the San Diego Freeway. The car overheated and stalled. Appellant was able to reach the shoulder of the transition road with the car. He refused a tow. After the Opel had cooled, appellant was able to start it. The car, however, continued to malfunction and appellant was forced to stop it on the triangle marked with the chevron-shaped stripes. The car was stopped between the "number 2 lane" (the right or most westerly lane of the San Diego Freeway) and the "number 3 lane" (the left or most easterly lane of the transition road). It was well clear of both the "number 2" and "number 3" lanes. Appellant did not turn on his blinker signal or his lights. He remained in the car out of fear for his safety.

Approximately five minutes after appellant's car stopped in the triangle, respondent approached driving south in the "number 2" lane (the most westerly or extreme right lane of the San Diego Freeway). Respondent was travelling approximately 55 miles per hour. His intended route of travel required that he exit the freeway at the Valley Vista off-ramp. To do so, he

3

26'

5' 2' 12' 14'

SIGN: "MERGING TRAFFIC"

ON RAMP FROM EASTBOUND VENTURA FRWY

Lane designations used in trial court -

4 | 3    2 | 1

8" PAINTED WHITE LINES

Lane designations used in trial court -

4 | 3    2 | 1

was required to cross the "number 3" and "number 4" lanes (the two lanes constituting the transition road).

The portion of the triangle in which appellant's vehicle was stopped can be seen from a point in the "number 2 lane" approximately 400 feet to the north. Respondent could see for approximately one-quarter of a mile ahead. Respondent testified that as he approached the triangle and when he had reached a distance of 300 to 350 feet from where appellant's car was stopped, he looked to his right for a second and one-half to two seconds in order to determine the flow of traffic on the transition road so as to permit him to cross it to the Valley Vista off-ramp. Respondent testified, also, that he did not in fact see appellant's stopped automobile until he was 100 to 130 feet away from it. Respondent was still traveling in the "number 2 lane" (the westernmost or far right lane of the San Diego Freeway) when he actually saw appellant's car.[1] In a fashion that is unexplained by respondent's testimony or otherwise, respondent's car left the "number 2 lane" and cut into the triangle where it hit appellant's car. Respondent's vehicle left 48 feet of four-wheel skid marks running due south on the pavement.

### Last Clear Chance

A requested jury instruction on last clear chance must be given if there is evidence of each of the following: (1) negligence of the plaintiff which has placed him in a position of danger from which he cannot escape by the exercise of ordinary care either because of a physical impossibility to do so or because he is totally unaware of his danger; (2) knowledge of the defendant that the plaintiff is in a position of danger; (3) knowledge by the defendant of the plaintiff's inability to escape from the danger or the existence of circumstances leading to the inference that the defendant in the exercise of ordinary care should have known that fact; (4) the existence of the defendant's last clear chance to avoid the accident by the exercise of ordinary care; (5) the failure of the defendant to exercise that care; and (6) injury to the plaintiff as a result of the defendant's failure to exercise the due care required of him to exercise his last clear chance to avoid the accident. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432]; *Spann* v. *Ballesty,* 276 Cal.App.2d 754 [81 Cal.Rptr. 229].)

*Plaintiff's position of danger.* Evidence of the first factor necessary to the giving of the last clear chance instruction is present in the record. Appellant, at a peak traffic hour, drove his malfunctioning automobile from

---

[1]Respondent testified that appellant's vehicle was also in the number 2 lane. The jury was, of course, free to accept part of his testimony and to disregard other portions of it.

a position of relative safety on the freeway shoulder to a position of danger where it stalled. Once there, he failed to activate his blinker signal or lights. Appellant remained in his vehicle at the juncture of the two freeway lanes because of fear for his safety. The jury properly could have determined that appellant's negligence placed him in a position of danger from which he could not escape by the exercise of ordinary care.

■ *Knowledge by defendant.* While California adheres to the rule that the doctrine of last clear chance is applicable only if the defendant has actual knowledge of the plaintiff's position of peril, that knowledge may be established by an inference drawn from circumstantial evidence. The jury is not required to believe the defendant's testimony with respect to discovery of the peril. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 745 [306 P.2d 432].) Evidence that the defendant could plainly have seen the peril if he had looked is sufficient to support the necessary inference of knowledge. (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 745; *Desherow* v. *Rhodes,* 1 Cal.App.3d 733, 747 [82 Cal. Rptr. 138]; *Spann* v. *Ballesty,* 276 Cal.App.2d 754 [81 Cal.Rptr. 229]; *Espinoza* v. *Rossini,* 247 Cal.App.2d 40 [55 Cal.Rptr. 205]; *Fry* v. *Young,* 267 Cal.App.2d 340 [73 Cal.Rptr. 62].) ■ Here there is evidence that appellant's position of peril was plainly visible to respondent from a distance of 400 feet.

*Knowledge by defendant of plaintiff's inability to escape.* ■ The same evidence which would justify an inference that respondent had knowledge of appellant's peril also justifies the inference that respondent knew of appellant's inability to escape from it. (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 745 [306 P.2d 432].) The jury could properly have inferred from respondent's unobstructed view of approximately 400 feet that he in fact observed appellant's vehicle stopped on the triangle from that distance. Once that inference was drawn, the jury was entitled to reach the further inference that respondent in fact knew of appellant's position of danger. It was also entitled to conclude that the respondent, in the exercise of ordinary care, should have known that appellant was unable to escape. Common experience of all who drive the freeways indicates that a vehicle stopped on the division between merging lanes of traffic is in a dangerous position from which escape is impossible.

*Defendant's last clear chance to avoid the accident.* ■ The doctrine of last clear chance is applicable only if the defendant, after learning of the plaintiff's peril, has a clear opportunity to avoid an accident by the exercise of ordinary care. (*Kaake* v. *Lott,* 252 Cal.App.2d 895 [60 Cal.Rptr. 843].) The presence of that opportunity of necessity depends upon the facts of the

individual case. The most important of those facts are the time available to the defendant to act and the measures necessary to avoid the accident. Here respondent was travelling at the rate of approximately 80 feet per second. If the jury were to infer from the evidence of ability to see respondent's vehicle from a distance of 400 feet that respondent did in fact see appellant's peril from that distance, respondent, had five seconds in which to react to the danger. The action required of respondent in order to avoid the accident was to say the least minimal. He need only have continued to travel as he had been travelling in the "number 2 lane" in which case he would have avoided appellant's car. Instead, respondent swerved without apparent reason into the "triangle" and caused the accident. The jury could well have inferred from that evidence that a reasonable man would not have turned his vehicle after acquiring knowledge of appellant's peril. It could have inferred also that respondent did not act reasonably. The jury could have drawn that same inference if they accepted as true respondent's testimony that he did not see appellant's car until he was 130 feet from it. While respondent's time to react under those circumstances would be only a second and one-half, no action was required on his part to avoid the accident. Respondent's last clear chance to avoid the collision consisted of his maintaining his course. If he had done so, no accident would have resulted. The jury was entitled to conclude that a reasonable man would not have turned his automobile so that it pointed at a stalled car although he learned of the stalled car only a second and one-half prior to turning.

It is the interplay of time to react and action necessary to avoid the accident which distinguishes the case at bench from the decisions relied upon by respondent. Those decisions involve situations where some substantial action on the part of the defendant was required in order to avoid an accident and where there was not a reasonable time in which to take that action.

*Failure of defendant to exercise due care and causation.* ▆ The jury was entitled to infer that respondent in turning his automobile from its course in the "number 2 lane" to a path which put it on a collision course with appellant's stalled automobile was exercising something less than ordinary care.

The argument is made that respondent's position in the "number 2 lane" is not significant since he may have commenced his turning maneuver within that lane before he first saw respondent's vehicle. The argument ignores the record, particularly the exhibits which disclose the nature of the confluence of the San Diego Freeway and the transition road. If, as the jury was entitled to infer, respondent saw appellant's vehicle from a distance of 400 feet, he would not then have started to cross to the transition road.

The argument is also made that "no sane man" observing a vehicle on the

divider strip would have attempted to cross it. The argument could be significant if this court were the trier of fact, but it is irrelevant to our function on appeal. We are required merely to determine whether the jury could properly have concluded from the evidence that respondent attempted such a maneuver. The jury could so have inferred. A "sane" but negligent driver might have determined, for example, that he could clear the stalled vehicle to its right. The jurors need not have possessed the driving skills of a Mario Andretti to know from common experience that a driver attempting to pass the stalled vehicle in that fashion at high speed might frustrate his ability to do so by such a vigorous application of his brakes as to leave 48 feet of four-wheel locked skid marks on the pavement.

There is no argument made that respondent's conduct was not the proximate cause of appellant's injury.

## Conclusion

There is in the record substantial evidence upon which the jury could have found that each of the facts necessary to the application of the doctrine of last clear chance was present. Under these circumstances, it was prejudicial error for the trial court to refuse to instruct on the doctrine.

The judgment is reversed.

Lillie, Acting P. J., concurred.

**GUSTAFSON, J.**—I dissent.

The majority opinion quite correctly notes that the jury was not compelled to believe defendant when he said that he did not see plaintiff's vehicle until he was only 100 to 130 feet away from it. But if the jury disbelieved defendant, this gives rise to no evidence as to when defendant actually saw plaintiff's vehicle.

The majority opinion points out that plaintiff's vehicle could have been seen by defendant 400 feet away and cites *Brandelius* v. *City & County of San Francisco* (1957) 47 Cal.2d 729 [306 P.2d 432] for the proposition that "Evidence that the defendant could plainly have seen the peril *if he had looked* is sufficient to support the necessary inference of knowledge." (Italics added.) I do not read the cited case as standing for that proposition. On the contrary, it emphasizes time and time again that the defendant must have actual knowledge of plaintiff's position of danger. It is in fact one of the anomalies of the last clear chance doctrine that the "driver who looks carefully and discovers the danger, and is then slow in applying his brakes, may be liable, while the one who does not look at all . . . may not." (Prosser, Law of Torts (3d ed. 1964), p. 443.)

I concede that in *Brandelius* the Supreme Court said that because there was evidence that "[defendant] had an unobstructed view of the situation for at least 135 feet," the jury could have inferred that he had *actual* knowledge of the victim's position of danger long before the point in time defendant claimed that he first saw the victim. Other cases cited in the majority opinion likewise emphasize the "unobstructed view" situation.

Were I free to do so, I would reject that principle. It is common human experience that of two persons with equally acute senses, one will feel something that the other does not, one will taste something that the other does not, one will smell something that the other does not, one will hear something that the other does not and one will see something that the other does not. That the other *could have* felt, tasted, smelled, heard or seen what the first did should not permit an inference that the other actually did. It is not too uncommon, for example, for a driver to run into the middle of a long train even though the day is clear, the warning bell is sounding and lights are flashing. The reason usually is that the driver is negligently inattentive. He may, for example, be looking at the floor of his vehicle for a dropped cigarette lighter and his radio may be playing loudly so that he neither sees nor hears what he *could have* seen and heard had he been acting prudently. But to equate what one could have done with what one actually did is, in my opinion, not logically justified.

I do not contend that the jury is bound by the testimony of the defendant. Evidence that a passenger shouted a warning to defendant about plaintiff's position of danger or that defendant took action calculated to avoid the accident would permit an inference by the jury that defendant had actual knowledge of plaintiff's position of danger even though defendant testifies to the contrary.

But accepting, as I must, the principle that mere opportunity to know permits an inference of actual knowledge, I do not believe that on the facts of this case there is substantial evidence of actual knowledge. Had the jury been instructed on the doctrine of last clear chance and had the jury returned a verdict for plaintiff, we would have been required to determine whether there was "substantial evidence" supporting the verdict. That term "clearly implies that such evidence must be of ponderable legal significance. Obviously the word [substantial] cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." (*Estate of Teed* (1952) 112 Cal.App.2d 638 [247 P.2d 54] quoted with approval in *People* v. *Bassett* (1968) 69 Cal.2d 122 [70 Cal.Rptr. 193, 443 P.2d 777].)

Defendant was faced with one of the nightmares of freeway driving. To

leave "number 2 lane" of the freeway and get on the Valley Vista off-ramp he was required to cross "number 3" and "number 4" lanes which were feeding traffic onto "'number 2 lane" of the freeway. This dangerous maneuver requires great skill. Quite naturally defendant looked to his right to ascertain that he was not on a collision course with vehicles traveling in "number 3" and "number 4" lanes. The majority opinion, noting that defendant was still in the "number 2 lane" when he actually saw plaintiff's car, questions why defendant's car left the "number 2 lane" and began to cross the triangle where it collided with plaintiff's car. I think there is no room for any question. Defendant had obviously started to turn toward the off-ramp (although his car was still within "number 2 lane") and this action would have taken him across the triangle and across "number 3" and "number 4" lanes had plaintiff's vehicle not been stalled in the triangle.

The majority opinion points out that if defendant had seen plaintiff's vehicle when defendant was 400 feet from it, defendant "need only have continued to travel as he had been travelling in 'number 2 lane' in which case he would have avoided [plaintiff's] car." I think this is the very reason why there is no substantial evidence that defendant saw plaintiff's car at that point in time. Not only would no reasonable man have turned after seeing plaintiff's car, but no sane man would have done so. Unlike *Brandelius* (cable car versus pedestrian) and other cases, a collision here posed as much of a threat of personal injury or death to defendant as it did to plaintiff. To me an inference that defendant saw plaintiff 400 feet away is not "reasonable in nature, credible, and of solid value."

Moreover, 'in each of the cases cited in the majority opinion holding that the jury was entitled to conclude that defendant "must have seen" the plaintiff earlier than defendant claimed, there was no evidence that defendant was looking, or had any reason to look, elsewhere than at plaintiff. Here, however, defendant had every reason to do what he said he did, that is, to look to his right to ascertain the traffic in the two lanes which he was about to cross. In this state of the evidence, it would be unreasonable for a jury to conclude that defendant "must have seen" plaintiff.

The majority opinion holds that even if defendant did not see plaintiff's vehicle until defendant, as he testified, was from 100 to 130 feet from it, the jury could have found that defendant had the last clear chance to avoid the collision. With this I also disagree. At the speed at which defendant was traveling, if he slammed on his brakes within three-fourths of a second, he would have traveled 60 feet. That he reacted immediately is demonstrated by the fact that he left 48 feet of skid marks. I believe that the majority opinion erroneously assumes that defendant, simply because his vehicle was in "number 2 lane" when he saw plaintiff's vehicle, had not started to turn to cross the triangle. Thus the majority opinion states that "no action was

required on [defendant's] part to avoid the accident. [Defendant's] last clear chance to avoid the collision consisted of his maintaining his course." The turn necessary to leave "number 2 lane" obviously had to be started while the vehicle was still in that lane. It is incredible to me that any trier of fact could find that defendant knew plaintiff's position of danger, "turned his automobile so that it pointed at [plaintiff's] stalled car" and simultaneously applied his brakes.

There is no point in analyzing each reported last clear chance case because the cases are irreconcilable. One case which deserves mention is *Kaake* v. *Lott* (1967) 252 Cal.App.2d 895 [60 Cal.Rptr. 843]. There the defendant motorist hit the plaintiff bicyclist after defendant became aware of plaintiff's position of danger. While it was physically possible for defendant to have passed plaintiff on the left without hitting him, "defendant was given but seconds within which to make an election either to swerve left or turn right and apply her brakes in so doing." Defendant chose the latter course and hit plaintiff. The trial judge instructed the jury on last clear chance and a verdict was returned for plaintiff. Then the trial judge ordered a judgment for defendant notwithstanding the verdict. The judgment was affirmed on appeal on the basis that defendant's wrong choice of action was immaterial because "the doctrine of last clear chance never meant a splitting of seconds when emergencies arise." The reason that case deserves mention is that this division of this court held that the trial judge erred in instructing on last clear chance and now the majority opinion tells the same trial judge that he erred in not instructing on that doctrine. When the majority opinion states that the jury could have found that defendant had the last clear chance to avoid the accident even though he had "only a second and one-half" within which to act, it is in direct conflict with cases such as *Bell* v. *Huson* (1960) 180 Cal.App.2d 820 [4 Cal.Rptr. 716] holding as a matter of law that the doctrine is inapplicable when the defendant has only two seconds to act.

Finally, I am not of the opinion from "an examination of the entire cause, including the evidence," that any error in failing to instruct on the doctrine of last clear chance "resulted in a miscarriage of justice" (Cal. Const., art. VI, § 13) because it is not reasonably probable that a verdict for the plaintiff would have been reached had the instruction been given. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)