[Civ. No. 30949. Second Dist., Div. Five. Jan. 23, 1968.]

TONY LOPEZ et al., Plaintiffs and Appellants, v. BEN MACHADO ORMONDE, Defendant and Respondent.

---

[8]Except, of course, the grounds relating to the interpretation and constitutionality of section 657 itself.

Everett E. Demler for Plaintiffs and Appellants.

Ball, Hunt, Hart & Brown and George C. McCarthy for Defendant and Respondent.

STEPHENS, J.—This is an appeal from a verdict for defendant in a wrongful death action. Decedent was a minor child of plaintiffs.

The evidence, as disclosed through the testimony of five percipient witnesses and an investigating officer, contains some conflicts. This is not to be unexpected in a case involving a traffic accident. Decedent lost his life beneath the dual rear wheels of defendant's 2½-ton truck. Since the sole thrust on this appeal is whether it was error to refuse to instruct (as requested)[1] upon the doctrines of *imminent peril* and *last clear chance,* we recite the facts in the form most favorable to plaintiff.

---

[1] A party has a right to an instruction if it is reasonable and finds support in the evidence and inferences which may properly be drawn from the evidence. (2 Witkin, Cal. Procedure (1954) Trial, § 52, p. 1780.)

Decedent and his younger brother were returning home after participating in a baseball game. The mode of travel was by bicycle, with the older brother (12 years old) pedaling, and the younger brother (8 years old) riding on the crossbar. It was approximately 4:30 p.m. when they reached the intersection of Katella and Los Alamitos after traveling north on Los Alamitos.

Upon reaching the northeast corner of the intersection, decedent stopped his bicycle adjacent to the curb and within the crosswalk, and the younger brother leaned over and pushed the pedestrain control button located on the signal pole.[2] The two boys, either walking and pushing the bicycle, or still on the bicycle, commenced crossing Los Alamitos, proceeding generally westerly after the "walk" sign came on.

The truck which later became involved had either been driven westerly along Katella Boulevard to Los Alamitos Boulevard, and there turned northerly, or had proceeded northerly on Los Alamitos, across the intersection of Katella. In either event, the truck arrived at the vicinity of the northeast corner at approximately the same time decedent commenced to proceed westerly, across Los Alamitos. The speed of the truck at point of impact of the truck wheels with decedent was between 5 and 10 miles per hour. The stopping distance of the truck was estimated to be between 4 and 5 feet at 10 miles per hour, and between 2 and 3 feet at 5 miles per hour.

The driver of the truck, the defendant, testified that at no time prior to the accident did he observe the boys.

Evidence establishes that the point of impact was 36 feet north of the north curbline of Katella Street, and 12 to 15 feet west of the east curbline of Los Alamitos. This point of impact was established by the investigating police officer, and was designated as the point at which decedent was beneath the wheels of the truck.

The pedestrian signal control button was in the close proximity of the northernmost crosswalk delineation. The northerly crosswalk line was some 10 to 12 feet north of the southerly crosswalk marking, there being two such lines at that location establishing the marked crosswalk. These two facts established

---

[2]The intersection was controlled by traffic signals but since their stages of sequence have no bearing on the issues before us, their stages are not discussed herein.

that the point of impact (wheels against the body) was some 24 feet north and outside of the crosswalk area.

The testimony of four of the six witnesses explains how and why decedent left the pedestrian sanctuary of the crosswalk. In summary, (except for the testimony of the younger boy who stated that both boys were walking and not riding), these witnesses place decedent and his younger brother on the bicycle, westbound, a foot or so from the northeasterly curb and within the crosswalk area. The decedent looked to his left, and apparently observed the oncoming truck. Upon decedent's recognition of the approach of the truck and its obvious danger, the boys were observed on the bicycle, wobbling under uncertain control and northbound, parallel and adjacent to the bed of the truck. They were seen to be bumping along the right truck-side, to the rear of the cab, and forward of the rear wheels, until the bicycle and its passengers fell at the "point of impact."

 There are two questions posed on appeal. The first is: Was it prejudicial error to refuse to give plaintiff's requested instruction on the doctrine of imminent peril? The answer is yes.

The instruction is that set forth in BAJI No. 137.[3]

Where the evidence is susceptible to a reasonable construction of lack of negligence on the part of the requesting party, the first element entitling him to the instruction is met.[4]

Under these facts it is reasonable to conclude that the decedent was not negligent as he started to cross westerly across the intersection, within the designated crosswalk and with the traffic control signal. Likewise, it is reasonable to conclude that the only reason decedent left the sanctuary of the crosswalk and proceeded north, parallel to the truck,

---

[3] "A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that are required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. [If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after-events, it should appear that a different course would have been better and safer.]"

[4] "A person who, without negligence on his part . . . ."

was an abortive effort to avoid impact with that vehicle. The choice of action proved disastrous, as we know, but certainly the unfortunate choice (even if the turning north and out of the crosswalk be negligent conduct) might well have been considered as reasonable under all the circumstances. (*Leo* v. *Dunham,* 41 Cal.2d 712, 715 [264 P.2d 1] ; *Grinstead* v. *Krushkhov,* 228 Cal.App.2d 793 [39 Cal.Rptr. 812] ; *Staggs* v. *Atchison, T. & S. F. Ry. Co.,* 135 Cal.App.2d 492 [287 P.2d 817].) This fact for determination should have been placed before the jury by proper instruction on imminent peril, thus excusing decedent from conduct which might otherwise have been negligent or contributory negligence. The substance of the instruction requested should have been given to the jury. (*Emery* v. *Los Angeles Ry. Corp.,* 61 Cal.App.2d 455, 462-463 [143 P.2d 112].)

▮ The second question is: Was it prejudicial error to refuse to give plaintiff's requested instruction on the doctrine of last clear chance? The instruction requested is that set forth in BAJI No. 205 (Rev.).[5]

▮ The defendant raises the interesting argument that since plaintiff objected to the instruction on contributory negligence, plaintiff is not entitled to the instruction on last clear chance. This suggestion is predicated upon the fact that contributory negligence is a necessary factor for the instruction's application. ▮ The plaintiff is not deprived

---

[5]"A certain reasoning process that we sometimes call to our aid in analyzing the facts of an accident case is known as the Doctrine of Last Clear Chance. It is permissible to use the doctrine only after we first find, and you may not use it unless and until you first shall have found, that in the events leading up to the accident in question both the deceased and defendant were negligent.

"The Doctrine of Last Clear Chance may be invoked if, and only if, you find from the evidence:

"First: That the deceased was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger;

"Second: That defendant knew that deceased was in a position of danger and further knew, or in the exercise of ordinary care should have known, that deceased was unable to escape therefrom;

"Third: That thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff."

of a proper instruction on a reasonable theory of his case merely because under some other theory urged the instruction would be inapplicable. ██ Since the issue of decedent's negligence, if any, was put to the jury, the instruction freeing him from the effect of such negligence was proper. It was the very theory of the defendant that made applicable this countering theory of plaintiff, and defendant cannot be heard to cry ''inconsistent theories,'' barring plaintiff's requested instruction.

██ It could have reasonably been found as a fact that decedent was contributorily negligent for failure to maintain a lookout for a vehicle coming through the intersection, or making a right turn, before he started walking or riding westbound. The fact that decedent progressed some 12 to 15 feet westerly of the east curb of Los Alamitos before ascertaining his danger could warrant such a conclusion. The conclusion that decedent did not change his direction of travel from west to north and from a position within the crosswalk to one outside thereof because of a desire to avoid the truck, but rather to ''jay-walk'' in his crossing the street, is also reasonable under the facts. The first element of last clear chance is, within a reasonable theory based on the evidence, established.

██ But is the second element of last clear chance satisfied by a reasonable conclusion under the stated facts? It is true that the defendant driver of the truck testified that he at no time observed the decedent prior to the deplorable event. In fact, the driver testified that he did not see the boys (or the bicycle) until he had stopped the truck, exited, and observed the result. There is evidence, however, that the passenger in the truck saw the boys and called out a warning to the driver before the impact, and presumably in time for the accident to have been avoided had the driver made the same observation as did his passenger. There is no dispute but that the boys were in open and clear view of any reasonably observant person, and visible for at least the width of Katella Street, if the jury were to believe that the truck crossed the intersection northbound when the boys were ahead of it. There is evidence that the driver turned on his left-turn signal and moved some distance to his left, in at least a partial-lane change, prior to reaching the point of impact. It can be concluded that the driver attempted to pass the boys by moving to the left (rather than to avoid a ''dip,'' as he testified), and that such evasive action established the requisite knowl-

edge of the boys' presence and position of danger at such period of time so as to satisfy this second stated element of the principle. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432]; *Espinoza* v. *Rossini,* 247 Cal. App.2d 40, 52-53 [55 Cal.Rptr. 205].)

The third element is likewise established. If the turning to the left was to evade the boys and not the "dip," there were both time and distance between the turn and the point of impact to permit the stopping of the truck, or other reasonable action by the driver to avoid the accident. The defendant driver, under such circumstance, clearly would have had the last clear chance to avoid the accident by the exercise of ordinary care. (*Espinoza* v. *Rossini, supra,* pp. 52-55.)

Since such findings might reasonably have been made, the error to refuse the last clear chance instruction is prejudicial. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16 [215 P.2d 728].

The judgment is reversed.

Kaus, P. J., and Aiso, J. pro. tem.,* concurred.

A petition for a rehearing was denied February 20, 1968.

---

*Assigned by the Chairman of the Judicial Council.