[Civ. No. 33364. Second Dist., Div. Two. Nov. 14, 1969.]

M. JAMES DESHEROW et al., Plaintiffs and Appellants, v. ERNEST MAX RHODES, Defendant and Respondent.

### COUNSEL

Jerrold I. Rudelson for Plaintiffs and Appellants.

Veatch, Carlson, Dorsey & Quimby, Robert C. Carlson and Henry F. Walker for Defendant and Respondent.

### OPINION

**FLEMING, J.**—Appeal from a second judgment for defendant after a second trial of a wrongful death action. Preliminarily, defendant seeks to dismiss the appeal as one taken from a void judgment. He argues that the second judgment was void because the order which vacated the first judgment and granted a new trial had not been entered within the required 60-day period. (Code Civ.Proc., § 660.) Section 660 requires a motion for a new trial to be determined within 60 days of notice of entry of judgment and makes an order granting a new trial effective on its entry in the permanent minutes of the court, or, if signed by the judge, on its filing with the clerk. We take up this procedural question first.

### I

The first trial concluded with a judgment for defendant, written notice of which was served on plaintiffs on 8 December 1966. Plaintiffs' motion for a new trial was heard by Judge Stevens Fargo on 6 February 1967, the 60th day following notice of entry of judgment, and after hearing the motion, Judge Fargo ordered a new trial. The minute order granting a new trial was filed with the clerk of the superior court and entered in the register of actions on 6 February, but unbeknown to the parties, it was not stamped with the clerk's entry stamp until 8 February.

Thereafter the cause was retried without any suggestion that the order which vacated the first judgment and granted a new trial had been ineffective. The second trial ended with a directed verdict for defendant, and from the resulting judgment plaintiffs have appealed.

Counsel on both sides were apparently unaware of the date of the clerk's entry stamp on the order for a new trial until plaintiffs' appeal from the second judgment had become perfected. The record on appeal did not show

the clerk's entry stamp on the order, but defendant augmented the record to include a certified photocopy of the original minute order, which showed 8 February as the date the clerk's entry stamp has been placed on the order.

Thereafter with leave of court plaintiffs filed declarations which showed:

1. The motion for a new trial was argued on 6 February, the 60th day after service of notice of entry of judgment; counsel and court were well aware that the motion would have to be determined that day.

2. After hearing argument the court ordered a new trial.

3. Counsel for plaintiffs prepared a written order for the judge's signature, but Judge Fargo determined to settle the wording of the order himself.

4. Accordingly, Judge Fargo wrote in longhand the exact wording of the order granting a new trial and delivered it to his clerk, Betty Peters, with instructions to enter the order that day in the permanent minutes of the court.

5. Miss Peters typed up the minute order from Judge Fargo's longhand draft and obtained his approval of the form of the order. She then signed it, dated it, and took it to the clerk's office where she entered the date and substance of the minute order in the clerk's register of actions. After doing this, she initialed the minute order, thereby indicating it had been entered in the register of actions.

6. Miss Peters next delivered the minute order to the minute and calendar clerk and relayed the judge's instructions to enter the minute order that day in the permanent minutes of the court.

7. She then told counsel for plaintiffs, who had accompanied her to the clerk's office, that everything had been taken care of and the minute order would be entered in the permanent minutes of the court that day.

8. No appeal was taken from the order granting the new trial. Subsequently, all parties participated in the second trial, which resulted in the judgment now before this court.

Defendant would have us hold all this activity a nullity because the clerk's entry stamp on the photorecorded original of the minute order indicates that the order had been entered in the permanent minutes of the court two days late and consequently the motion for a new trial had not been timely determined.

Section 660 reads in pertinent part: ". . . [T]he power of the court to pass on motion for a new trial shall expire 60 days from and after service on

the moving party of written notice of the entry of the judgment, . . . If such motion is not determined within said period of 60 days, . . . the effect shall be a denial of the motion without further order of the court. A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk. . . . The minute entry shall in all cases show the date on which the order actually is entered in the permanent minutes, but failure to comply with this direction shall not impair the validity or effectiveness of the order."

Defendant argues that the minute order which purported to set aside the first judgment and grant a new trial was entered in the permanent minutes of the trial court after the court's power to determine the motion had expired; therefore, the motion for a new trial was denied by operation of law, the first judgment became final, and all subsequent proceedings, including the second trial and second judgment, were void.

We note, first, that this cause does not involve the question of a trial judge's power to order a new trial after the 60-day period has expired. Had Judge Fargo made his order on the 61st day, his power to make the order would have lapsed, and the issuance of an order for a new trial would have been beyond his jurisdiction. (*Siegal* v. *Superior Court,* 68 Cal.2d 97 [65 Cal.Rptr. 311, 436 P.2d 311].) Here, it is undisputed that Judge Fargo made his order within the 60-day period. But since he did not personally sign the order for a new trial, the critical issue is whether Judge Fargo's order was entered in the permanent minutes of the court within the 60-day period. Patently, this issue requires us to consider what records comprise the permanent minutes of the court and what steps are essential to the entry of an order in the permanent minutes.

From the declarations filed with this court it appears that Judge Fargo prepared and approved a draft of his minute order and directed his clerk to see that it was entered in the permanent minutes of the court that same day, that the minute order was copied, signed, and dated by the clerk, delivered to the clerk's office, entered in the register of actions, and handed to the minute and calendar clerk with the judge's instructions to enter it in the permanent minutes that day. It appears that every step in the routine for entry of an order in the permanent minutes had been taken except the placement of the clerk's entry stamp on the order and photorecordation of the order on microfilm. Defendant's contention, therefore, must be that regardless of specific instructions of the judge an order does not qualify as having been entered in the permanent minutes of the court until it has been stamped with the clerk's date of entry stamp.

So far as we can discover the California codes have not defined

permanent minutes of a court, or what constitutes entry of an order in the permanent minutes. Nor to our knowledge have the various courts in California adopted any uniform method of keeping minutes and recording the entry of minute orders in their records. However, Government Code section 69844 gives us some guidance: "The clerk of the superior court shall keep the minutes and other records of the court, entering at length within the time specified by law, or forthwith if no time is specified, any order, judgment, and decree of the court which is required to be entered and showing the date when each entry is made. Failure so to enter the date or failure to enter the order, judgment, or decree within the time specified in this section shall not affect the validity or effectiveness of the entry." Under this section the clerk is explicitly required to enter orders of the court "within the time specified by law, or forthwith if no time is specified." And by the nature of his office the clerk is required to follow the lawful orders of the court with respect to the time of making entries. (Gov.Code, § 69841; cf. *Union Bank & Trust Co.* v. *Los Angeles County,* 2 Cal.App.2d 600, 609 [38 P.2d 442].) Clearly, under the language of section 69844 the clerk's failure to enter an order within the time specified by the court does not invalidate the effectiveness of its entry; such a failure is a purely clerical error which courts have continuing power to correct. (*Carpenter* v. *Pacific Mut. Life Ins. Co.,* 14 Cal.2d 704 [96 P.2d 796]; *Doxsee Co.* v. *All Persons,* 3 Cal.2d 609 [45 P.2d 192].)

However, defendant argues in effect that the 1959 amendment to section 660 overrides the general rule governing late entry of orders and establishes an absolute requirement that an order granting a new trial be entered in the permanent minutes of the court to become effective. (34 State Bar J. 86, 468, 643.) Assuming for purposes of this case the correctness of this argument, we are then required to determine what constitutes entry of an order in the permanent minutes of the court. As previously noted, neither permanent minutes nor entry of an order has been defined by statute. In the absence of definition we must attempt to identify the essentials of meaning which generally attach to these terms. When we have done so, we can then decide whether the essentials have been satisfied in a given instance, and, if so, whether such satisfaction amounts to substantial or constructive compliance with the requirements of section 660.

The Government Code directs the clerk of the superior court in general terms to keep the minutes and other records of the court (§ 69844), to keep indexes to insure ready reference to any action or proceeding filed with the court (§ 69842), and to keep a register of actions in which he must enter the title and date of each action and a memorandum and date of each subsequent proceeding in the action (§ 69845). The clerk is authorized to photorecord on microfilm all superior court minutes, judgments, orders,

and decrees in lieu of keeping them in minute books and judgment books, and to index them in convenient, accessible files (§ 69844.5).

In Los Angeles County, the clerk of the superior court handles the entry of minute orders in the following fashion: After preparation of the written minute order one copy is placed in the jacket file of the action to which it relates and another is transmitted to the clerk's office. At the clerk's office the date and a brief description of the order are recorded in the register of actions, and the order is then delivered to the minute and calendar clerk. A day or two later each of the minute orders made on a particular day by a particular department is placed in a temporary binder and stamped with a clerk's rubber stamp which shows the date of entry of the minute order. Some 20 to 30 days later the minute order is photorecorded, and the resulting microfilm becomes the official record of the order. About three months later the minute orders in the temporary binder are destroyed. The delay of one or two days in the stamping of the order with the date of entry is primarily caused by the fact that minute orders come flooding into the clerk's office at the close of the day on which they are made or on the following day. The delay in photorecordation reflects a conscious policy of the clerk to allow sufficient time to elapse before photorecordation so that all orders which relate to a given day can be recorded in sequence. The recorded microfilm of the order is not the official record of the order for all purposes. On appeal, for example, the copy of the order in the jacket file of the action is the one used to prepare the record on appeal.

It may be seen that entry of an order in the permanent minutes of the court does not refer to any single act of recordation but rather describes the process followed in making minute orders part of the permanent records of the court. The one act which most closely resembles entry in the permanent minutes of the court is photorecordation on microfilm. But since photo-recordation does not occur until 20 to 30 days after delivery of an order to the clerk's office and since the time of photorecordation is not itself recorded, this act is of no help in fixing the date of entry of a minute order in the permanent minutes of the court. To provide content for the operation of statutes which refer to the date of entry of an order the clerk has instituted a practice of collecting minute orders in a temporary binder and rubber-stamping them with an arbitrarily designated date of entry. The stamped date of entry identifies the date of the minute order for purposes of photorecordation, but so far as we can determine it fulfills no other function in the recording process itself. It does not change the date typed on the order, or the date the order was placed in the jacket file of the action, or the date the order was delivered to the clerk's office, or the date the order was recorded in the register of actions. Indeed, as illustrated by the present case, no one connected with the case ordinarily knows what date of entry has been stamped on a given order, and after the order has been

photorecorded no one has any way of finding out, except by reference to the original microfilm. Functionally, it is apparent that stamping a date of entry on a given minute order is a purely mechanical step in the processing of the order for photorecordation.

■ When we analyze the process of entry of an order in the permanent minutes, we find three elements which appear essential: (1) preparation of a written minute order; (2) recordation of the date and substance of the order in a permanent record; (3) delivery of the order to the custodian of records. Each of these elements appears indispensable to the making of a permanent record of the order, and hence each remains essential to the process of entry in the permanent minutes. We think performance of these essentials is required by section 660, and we think a judge is without authority to waive them or make performance retro-active.

But certain additional steps take place in the mechanical recordation of an order, including the filing of the order in a temporary minute binder, its stamping with a date of entry stamp, and its recordation on microfilm. Is any of these additional steps critical to the process of entering an order in the permanent minutes of the court so that without its performance the order cannot be deemed effective? Does performance of the essentials of entry amount to substantial compliance with the requirements of the statute, even though one or more additional steps in the process have not been taken? Is a failure to timely perform one or more of these additional steps correctible by the court as clerical error? We turn to a consideration of the effect to be given substantial compliance with a procedural statute.

From time to time courts have undertaken to define substantial compliance. For example, "Substantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute. But where there is such actual compliance as to all matters of substance then mere technical imperfections of form . . . should not be given the stature of noncompliance . . ." (*Stasher* v. *Harger-Haldeman,* 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649].) While the issue of substantial compliance has arisen in a variety of situations dealing with the satisfaction of formal requirements of the law (*Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278, 281 [49 Cal.Rptr. 676, 411 P.2d 564]; *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.,* 28 Cal.App.2d 215, 223-224 [82 P.2d 216]; *Ridge* v. *Boulder Creek etc. School Dist.,* 60 Cal.App.2d 453, 457-458 [140 P.2d 990]; *Kelso* v. *Board of Education,* 42 Cal.App.2d 415, 421-422 [109 P.2d 29]), those instances of timely performance of acts involving the legal process itself appear most relevant to the cause at bench. Of particular significance are the cases which deal with time requirements for the filing of criminal and civil appeals.

For many years legal commentators declared it axiomatic that the timely filing of a notice of appeal was jurisdictional and that unless a notice of appeal was filed within the required time the court appealed to would have no jurisdiction to hear the case. (4 Am.Jur.2d, Appeal and Error, § 292.) Thus spoke Mr. Witkin in 1954: "The time to file notice of appeal, both in civil and criminal cases, has always been held jurisdictional in California. A late notice is *void;* the time cannot be extended by waiver or estoppel, and the failure to file cannot be excused by the trial judge's mistake or the adverse party's fraud." (3 Witkin, Cal. Procedure (1954) p. 2300.) And again Mr. Witkin in 1963: "It is an established rule in civil and criminal cases, in both state and federal courts, that a timely notice of appeal is essential to appellate jurisdiction. A late notice is therefore wholly ineffectual: The delay cannot be waived, it cannot be cured by a nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion." (Witkin, Cal. Criminal Procedure (1963) p. 677.) Prior to 1959 the Rules on Appeal contained no exceptions to the requirements for the timely filing of an appeal, either criminal (rule 31) or civil (rules 2 and 3).

Yet in spite of the forbidding heights of these ramparts, moated on all sides by jurisdictional mystique, a few bold litigants succeeded in tunneling under the walls and effecting a narrow passage, one which in time has become wide enough to accommodate an extensive subterranean traffic in exceptions to the absolute requirement for a timely notice of appeal. These underground intrusions into the appellate fortress have now been formally sanctioned under the passport of substantial or constructive compliance with the particular requirement involved.

For criminal appeals the leading case is *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], a case dealing with the requirement that a criminal appeal be filed within 10 days of the rendition of the judgment. Slobodion, a prisoner in San Quentin, deposited his notice of appeal in the prison mail box in sufficient time for it to have been received by the clerk of the court within the 10-day period prescribed by rule 31 of Rules on Appeal. Because of the negligence of prison employees the notice did not reach the clerk of the court until the time to appeal had expired. The Supreme Court held that since Slobodion was dependent on prison employees for transmission of his notice of appeal, his notice had been constructively filed within the proper period of time: "Respondent cites the settled rule in this state, both in civil and criminal cases, that the time requirements for the taking of an appeal are mandatory, and that the appellate courts are without jurisdiction to consider an appeal which has been taken subsequently to the expiration of the statutory period. (*Estate of Hanley,* 23 Cal.2d 120, 122-123 [142 P.2d 423, 149 A.L.R. 1250], and cases there

cited; *People* v. *Lewis,* 219 Cal. 410, 413-414 [27 P.2d 73], and cases there cited.) But adherence to this rule will not deprive appellant of his appeal under the distinct factual situation involved. Here appellant, by reason of his imprisonment and desiring to appeal in propria persona, was wholly dependent on the prison employees for effecting the actual filing of his notice of appeal within the prescribed time. . . . In such circumstances, no other conclusion is tenable but that appellant, by placing his notice in the hands of the state's employees for mailing six days prior to the final day allowed for its actual filing, met the time requirements governing his right of appeal insofar as it was possible for him to do so. Obviously, he was powerless to prevent any delay which might ensue after he delivered in prison his notice of appeal to the state employees for forwarding; any tardiness then occurring was attributable wholly to the state's employees. It would be absurd to hold in a criminal case that the state may extend the right of appeal contingent upon timely pursuit thereof and then deny such fundamental right because the state's employees were remiss in complying with the state's law. Such a paradoxical result would have no legal justification, and so it must be said here that when appellant timely deposited his notice of appeal with the state's employees as required by the state prison rules, such action constituted a constructive filing of the specified notice." (30 Cal.2d at pp. 365-367.)

The applicability of the reasoning of the *Slobodion* opinion to the present case is self-evident. At bench, plaintiffs took all steps available to them to ensure that the judge's order was timely entered in the permanent minutes of the court. Like Slobodion, they too were powerless to prevent tardiness attributable solely to the neglect of public employees. It would seem as unfair to deny them their right to a new trial because of a deputy clerk's neglect in complying with the judge's order, as it would have been to deny Slobodion his appeal "because the state's employees were remiss."

Since *Slobodion* the rule of constructive compliance has been used in a variety of other criminal appeals. For example, in *People* v. *Head,* 46 Cal.2d 886 [299 P.2d 872], appellant, after judgment of conviction, was held in custody and moved from place to place by the custodial authorities. Appellant declared he had delivered his notice of appeal to appropriate custodial officers. The court held that such delivery constituted constructive filing of a notice of appeal within the 10 days prescribed by the rule. The further development and elaboration of the concept of constructive filing of criminal appeals has been summarized in Witkin, California Criminal Procedure (1963), pp. 678-680.

In civil appeals the doctrine of substantial compliance has enjoyed a similar flowering. In *Slawinski* v. *Mocettini,* 63 Cal.2d 70 [45 Cal.Rptr. 15, 403 P.2d 143], plaintiff's motion for a new trial was denied on 10 July,

and the clerk's minutes for that day duly reflected the denial of the motion. However, on 13 July the judge signed a formal order of denial which recited that the order had been entered on 13 July, and a copy of that order was served on plaintiff. On 12 August plaintiff filed a notice of appeal under rule 2 of California Rules of Court, a timely appeal within 30 days if 13 July were the date of entry of the order denying a new trial, but untimely if 10 July were the effective date of the order. As we know, Code of Civil Procedure section 660 declares that entry of an order in the permanent minutes of the court constitutes a determination of the motion for a new trial. Nevertheless, the court found the appeal timely on two apparent grounds: (1) substantial compliance with rule 2, and (2) justifiable reliance by plaintiff on recitations in the written order which he was entitled to accept at face value. It may be seen that in *Slawinski* an element of estoppel was involved. The same is true at bench, where defendant proceeded with the second trial without raising any question of the timeliness of the order granting a new trial until after an appeal from the second judgment had been taken.

Other examples of substantial compliance with particular time requirements for the performance of legal acts in civil cases are found in *Deward* v. *La Rue,* 235 Cal.App.2d 59 [44 Cal.Rptr. 886] (appeal from the wrong judgment held a timely appeal); *Vibert* v. *Berger,* 64 Cal.2d 65 [48 Cal.Rptr. 886, 410 P.2d 390] (appeal from an order sustaining a demurrer construed as a timely appeal from the judgment of dismissal); and *Espinoza* v. *Rossini,* 247 Cal.App.2d 40 [55 Cal.Rptr. 205]. In the last case the issue was whether the trial court had complied with Code of Civil Procedure section 629, which requires the court to rule on a motion for a new trial at the same time that it rules on a motion for judgment notwithstanding the verdict. The trial court did not literally comply with the statute, for it ruled on the motions for a new trial on Friday and ruled on the motions for judgment notwithstanding the verdict on the following Monday. Nonetheless the court on appeal held that the trial court had substantially complied with the requirement of the section: "From these facts we are able to surmise that for all intents and purposes the court ruled on both motions at approximately the same time, and the three-day delay in the entry of its orders on the permanent court minutes was due to the intervening holidays. Under these circumstances, we believe that there was substantial compliance with section 629, and that although the trial court's action was irregular, the irregularity is not fatally defective. The contrary interpretation would either invalidate both orders or invalidate the trial court's order granting respondents' motion for judgment notwithstanding the verdict, and under the facts of this case would defeat the apparent intent and purposes of the Legislature in amending section 629. It is a cardinal rule that a statute should be given reasonable interpretation, in

accordance with the apparent purpose and intention of the lawmakers. (*County of Alameda* v. *Kuchel,* 32 Cal.2d 193 [195 P.2d 17].)" (247 Cal.App.2d at p. 46.)

By 1967 the walls of the jurisdictional theory of timely notice of appeal had become so honeycombed with exceptions that Mr. Witkin concluded with respect to criminal appeals, "The *Slobodion* rule has been so extended as to virtually abolish the jurisdictional time for appeal by an incarcerated prisoner;" and with respect to civil appeals, ". . . late filing can be relieved by proof of estoppel; and if this is so, the time limit is not jurisdictional, and may be overcome by any compelling excuse . . ." (Witkin, Cal. Procedure (1967 Supp.) pp. 965, 966.)

From this brief review it is apparent that courts are inclined to construe filing requirements liberally in order to assure litigants their day in court, doctrinal theory notwithstanding. (*Slawinski* v. *Mocettini,* 63 Cal.2d 70, 72 [45 Cal.Rptr. 15, 403 P.2d 143].) The courts also remain mindful of their constitutional and statutory mandate to disregard at every stage of an action procedural error which does not affect the substantial rights of the parties. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) ■ At bench the sole procedural error arose from the failure of a deputy clerk to stamp an order for a new trial with the clerk's entry stamp on the day he was instructed to do so by the judge. We do not think such a slip nullifies the timely entry of the order in the permanent minutes of the court when the essentials of such entry have otherwise been complied with. The failure of the minute and calendar clerk to follow the judge's instructions in stamping the minute order amounts to no more than clerical nonfeasance with respect to an order whose processing had already satisfied the essentials of entry in the permanent minutes of the court. Since essentials had been satisfied, deficiencies in the further processing of the order were properly classified as clerical error, which could be either disregarded, or, if deemed appropriate, routinely corrected under Code of Civil Procedure, section 473, which permits the court to correct clerical mistakes in its judgments and orders. Nothing in *Siegal* v. *Superior Court,* 68 Cal.2d 97 [65 Cal. Rptr. 311, 436 P.2d 311], a case which involved the purported issuance and entry of an order for a new trial by the court two weeks after the 60-day period had expired, precludes the use of a rule of substantial compliance to recognize the entry of an order in the permanent minutes of the court which had been timely reduced to writing, timely recorded in a permanent record, and timely delivered to the custodian of records.

We conclude that the order granting a new trial had been appropriately entered in the permanent minutes of the court on 6 February, and accordingly we proceed to the merits of the appeal.

## II

On a November morning, decedent, a pedestrian, was walking diagonally across the street in the middle of a block with traffic controls at one end only when she was struck from the rear by an automobile and killed. Decedent had not been looking in the direction whence the automobile came. Defendant, the driver of the automobile, testified he had been blinded by the glare of the sun and had not seen decedent before the impact. At the end of the second trial the court granted defendant's motion for a directed verdict on the ground that decedent's negligence had been established as a matter of law and the doctrine of last clear chance did not apply.

The substantive issue before the court is whether the doctrine of last clear chance justified the submission of plaintiff's case to the jury. ■ In *Spann* v. *Ballesty,* 276 Cal.App.2d 754 [81 Cal.Rptr. 229] (filed 10 October 1969) we summarized the elements of the doctrine as follows: "To justify invoking the doctrine of last clear chance, the trier of facts must be able to find from the evidence: '(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it was physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.' (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432].)

■ "Whether the elements essential to the last clear chance doctrine exist is controlled by the factual circumstances of each case, and in determining, on appeal, whether an instruction on last clear chance should have been given, the evidence must be viewed in the light most favorable to the application of the doctrine, including every reasonable inference in support thereof. (*Philo* v. *Lancia,* 256 Cal.App.2d 475 [63 Cal.Rptr. 900].) ■ An instruction on last clear chance must be given whenever there is substantial evidence tending to establish each of its elements, even though it may be equally reasonable to conclude from the evidence that the elements of the doctrine have not been established. (*Summers* v. *Randall,* 123 Cal.App.2d 113, 119 [226 P.2d 217].)"

■ Here the jury could have reasonably concluded that decedent was in a position of danger as a result of her own negligence in crossing

the street in the manner and at the place she crossed, that she was unaware of the approach of defendant's vehicle, that immediately prior to the accident defendant knew decedent was in a position of danger even though he testified to the contrary, and that defendant had the last clear chance to avoid the accident by the exercise of ordinary care. ■ Although California follows the doctrine of discovered peril and requires defendant to have had actual knowledge that the decedent was in a position of danger (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432]; *Lebkicher* v. *Crosby,* 123 Cal.App.2d 631 [267 P.2d 361]), such knowledge may be shown by circumstantial evidence (*Bailey* v. *Wilson,* 16 Cal.App.2d 645 [61 P.2d 68]). "Actual knowledge, however, may be shown by either direct or circumstantial evidence, and the jury may infer, from all the circumstances, that the defendant did know of the plaintiff's danger in time to avert the accident, even though he testifies that he did not, and even though there is no other direct evidence that he did." (*Spann* v. *Ballesty, supra.*) In *Lebkicher* v. *Crosby, supra,* 123 Cal.App.2d 631, 638, the court declared, "where the victim was in the path of the vehicle and plainly visible to the driver, the jury may conclude that the driver 'must have seen' him, and may therefore be instructed on the doctrine of last clear chance even though there is no direct evidence that defendant actually knew of the victim's presence in the roadway, and even though he may have testified that he did not see the victim in time to avoid hitting him." (*Gillette* v. *City & County of San Francisco,* 58 Cal.App.2d 434, 438-442 [136 P.2d 611]; *Lopez* v. *Ormonde,* 258 Cal.App.2d 176 [65 Cal.Rptr. 513].)

■ We think the critical facts at bench were aptly summarized by Judge Fargo in his order granting a new trial: ". . . in view of the clear evidence that decedent was in full view of defendant for more than 150 feet of defendant's approach to her, his denial that he saw her might have been rejected by the jury, especially in view of defendant's impeachment on the matter of being blinded by the sun."

Since the cause should have been submitted to the jury, the judgment is reversed.

Roth, P. J., and Herndon, J., concurred

A petition for a rehearing was denied December 10, 1969, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1970.