[Civ. No. 26498. First Dist., Div. Three. June 21, 1971.]

ELIZABETH FORTENBERRY, Plaintiff and Respondent, v.
GENE D. WEBER et al., Defendants and Appellants.

**COUNSEL**

Athearn, Chandler & Hoffman and Leigh Athearn for Defendants and Appellants.

Leonard & Dole and Stuart R. Dole for Plaintiff and Respondent.

**OPINION**

**CALDECOTT, J.**—Elizabeth Fortenberry brought an action to recover damages, including exemplary damages, against Francis I. duPont & Co., and its employees, Gene D. Weber and Edward A. White, for mismanagement of a securities account.

On February 29, 1968, the jury returned a verdict in favor of defendants. Notice of entry of judgment was filed March 4, 1968. On March 15, 1968, plaintiff filed a notice of a motion for a new trial. The motion was granted on May 3, 1968. On May 8, 1968, the trial court filed a specification of the reasons for granting the motion for a new trial. On July 1, 1968, defendants filed a notice of appeal from the order granting the motion for a new trial. On July 5, 1968, plaintiff filed a notice of cross-appeal from the judgment.

Plaintiff's securities account was opened with the San Francisco office of

Francis I. duPont & Co. on or about April 4, 1957, when the first securities trade was made on her behalf. At the time, plaintiff (then Miss Elizabeth Kleiner) was a student at the University of California, residing in Berkeley. After graduating in the early summer of 1957, she returned to her native State of Texas, where she remained a permanent resident, until the trial of this action in February 1968.

The last trade of securities on behalf of plaintiff was made on January 2, 1962, and the account was closed out on or about May 14, 1962, when certain securities held in a margin account by defendant duPont were transferred at plaintiff's request to another firm of securities dealers. Throughout this period, White was the resident partner of duPont, and Weber was the account executive who had charge of plaintiff's account.

Plaintiff's account was handled on a discretionary basis; that is, the broker-dealer would make purchases and sales against plaintiff's account without first seeking her approval. No prior authorization was obtained by the brokerage house to handle plaintiff's account on a discretionary basis despite rules of the New York Stock Exchange, of which duPont was a member, and of duPont itself, requiring that no account will be handled on a discretionary basis without prior written authorization.

Following each transaction, duPont would send plaintiff a confirmation slip and, at the end of each month, a summary statement. This information was on computerized forms which plaintiff states she found confusing. Accordingly, she relied on Weber to keep her advised of the status of the account by telephone, which he did on an off-and-on basis, and by periodic written reports prepared by Weber himself. These reports were not always accurate, so that when plaintiff relied upon them in the preparation of income tax returns, she was compelled at a later date to prepare and file amended returns.

During the course of the management of her account, defendants undertook a total of 570 transactions on behalf of plaintiff which, when based upon her average investment, showed a turnover rate of 20.44 times, or if based upon her net investment, showed a turnover rate of 16.77 times. Turnover rate is the total cost of all purchases divided by the average or net investment. It is an index for the determination of excessive activity.

In handling plaintiff's portfolio, defendants established at least four types of accounts on her behalf, including a cash account, a short account, a margin account and a special subscription account. The last, apparently, was used for the purchase and sale of option premiums, straddles and put-and-call transactions. In addition, defendant Weber introduced plaintiff to the

Mechanics' Bank of Richmond, California, where a borrowing account was opened on her behalf. This account was secured by stock or bond certificates delivered to the bank by defendant Weber, and borrowings from this account frequently exceeded $25,000.

The total interest charged plaintiff by duPont for sums loaned against plaintiff's margin account was $12,970.09. The total interest charged plaintiff by Mechanics' Bank of Richmond was $5,169.60. The total commissions charged to plaintiff by defendant duPont on agency transactions was $19,500.90, not counting the markup on principal transactions estimated to be $11,282.10. The total charges, then, against plaintiff's account for commission and interest payments were $48,922.69. Against these charges, the realized net total trading profit for plaintiff during the entire period of the account was but $4,070.66, excluding the losses on securities purchased for plaintiff's account and not sold.

In 1961, plaintiff commenced receiving margin calls, both from duPont and the Mechanics' Bank of Richmond. At first she met these calls with cash payments, but later she could no longer meet the margin calls and had to liquidate. When her account was finally closed on May 14, 1962, it consisted of a portfolio of approximately 19 securities, all of which were held as collateral either by defendant duPont or by Mechanics' Bank of Richmond. On that date, the securities were liquidated in order to pay off these liens, which in the case of duPont came to $32,016.28, and in the case of Mechanics' Bank of Richmond to $15,628.10. The cost of these securities was $115,781.86, but on sale at or shortly after May 14, 1962, only $54,-291.70 was obtained. Upon paying the duPont margin account and the Mechanics' Bank of Richmond loan, plaintiff realized but $6,646.82 out of a total net investment in the account of $93,608.01, resulting in an out-of-pocket loss of $86,961.19. Throughout the period that plaintiff's account was handled by defendants, the Dow Jones Industrial Average rose from 475 to 725, an increase of 250 points.

On the morning of February 5, 1968, the first day of trial and before a jury was selected, defendants moved to file an amended answer setting up the defense of contributory negligence. The motion was granted, and defendants' amended answer was filed with the clerk. Defendants' motion did not request amendment of the pretrial order which remains in its original form as filed.

Defendants thereafter requested an instruction on contributory negligence and one on ratification, both of which were given. Defendants' argument to the jury was directed toward the contributory negligence of plaintiff, and the jury, after retiring to deliberate, returned to the courtroom for a re-

reading of the instruction on contributory negligence. The jury returned a verdict in favor of defendants.

I

Was the order granting the new trial entered in the permanent minutes of the court within the statutory 60-day period?

 Code of Civil Procedure section 660 provides in part as follows: "Except as otherwise provided in Section 12a of this code, the power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 or 60 days from and after service on the moving party by any party of written notice of the entry of judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial. If such motion is not determined within said period of 60 days, or within said period as thus extended, the effect shall be a denial of the motion without further order of the court. A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk. . . ."

On May 3, 1968 (60 days after mailing of notice of entry of judgment), a longhand notation was made in the minutes of department 14, superior court. The longhand notation contained abbreviations commonly used by courtroom clerks. The full text of the entry, expanding the abbreviations, would read as follows: "Heretofore submitted, the Court ordered plaintiff's motion for a new trial granted. Reason, error in instructions and insufficiency of the evidence. Memo to follow."

Government Code section 69844 requires the clerk of the superior court to keep minutes of the court. Appellants maintain that these longhand minutes in which this entry was made are the rough minutes of the court. The respondent contends they are the permanent minutes. It is well settled law that the rough minutes are not the official records of the court. (*Van Tiger* v. *Superior Court,* 7 Cal.2d 377, 381 [60 P.2d 851]; *Brownell* v. *Superior Court,* 157 Cal. 703, 705-706 [109 P. 91]; *Wyman* v. *Municipal Court,* 102 Cal.App.2d 738, 740 [228 P.2d 89, 229 P.2d 491].) If the entry of the order was made in the rough minutes, it was not made within the 60-day period as required by Code of Civil Procedure section 660, and the order would be invalid.

 The question was raised as to what constitutes the permanent minutes of the Superior Court of San Francisco. To answer this question,

a hearing was held in the Superior Court of San Francisco, pursuant to the order of this court of March 8, 1971, directing that findings be made as to what constitutes the permanent minutes of that superior court and the date of entry of the order granting plaintiff's motion for a new trial. The court found that "Minute Book Volume 710 [the minute book in question here] was at the time of the entry of the order granting a new trial herein on May 3, 1968 and now is the current volume of the minutes of Department 14." The court further found that "Any orders entered in Volume 710 are entered in the permanent minutes of this court." This finding is supported by the evidence.

Apparently, in the Superior Court of San Francisco, the clerk of the court does not keep any rough minutes, as distinguished from permanent minutes. The only minutes of that court are the longhand minutes prepared during the course of the day, and these are the permanent minutes. The assistant county clerk testified that the longhand minutes are the permanent minutes of the court. He further testified that microfilm copies of certain orders are made, but that these are not a complete record, and that just what documents are microfilmed lies, to some extent, within the discretion of the individual courtroom clerk. Rulings on motions for a new trial would not be microfilmed.

In the light of the trial court's findings, which are fully supported by the evidence, the order of May 3, 1968 was entered in the permanent minutes within the 60-day period.

The case of *Desherow* v. *Rhodes,* 1 Cal.App.3d 733 [82 Cal.Rptr. 138], cited by appellants, is distinguishable on its facts. *Desherow* concerns the entry of orders in the permanent minutes of the Superior Court of Los Angeles County. The Los Angeles court's procedure, however, differs from that of the San Francisco court and, as *Desherow* points out, at page 739, the various courts in California have not adopted any uniform method of keeping minutes and recording the entry of minute orders in their records.

## II

Appellants contend that the specification of reasons, given by the trial court when granting a motion for a new trial, must be signed and filed within the 60-day statutory period.

Code of Civil Procedure section 657 provides in part: "The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of

reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. . . ."

The question presented is whether this 10-day statutory period must be within the 60-day statutory period of section 660, or if it could be in addition to that period. Initially, it should be noted that one court, in dicta, has observed that "perhaps" the period is "limited to the 60-day period, after service of notice of entry of judgment, which Code of Civil Procedure section 660 allows for the court to pass upon a motion for new trial." (*Swanson* v. *Western Greyhound Lines, Inc.,* 268 Cal.App.2d 758, 760 [74 Cal.Rptr. 383].) Yet it is also true a statute must be given a reasonable and practical construction (*Mercer* v. *Perez,* 68 Cal.2d 104, 115 [65 Cal. Rptr. 315, 436 P.2d 315]; *Dempsey* v. *Market Street Ry. Co.,* 23 Cal.2d 110, 113 [142 P.2d 929]), and there is a constitutional and statutory mandate to disregard at every stage of an action procedural error which does not affect the substantial rights of the parties. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

The very language of section 657 provides the reasons must be stated within 10 days *after granting the motion,* and the language has been so interpreted. (See *Mercer* v. *Perez, supra* at p. 121.) Moreover, one court has noted, "It would be unreasonable . . . to construe section 657 as compelling the judge to set forth his 'examination of the entire cause, including the evidence,' on the face of the new trial order itself." (*Treber* v. *Superior Court,* 68 Cal.2d 128 at p. 131 [65 Cal.Rptr. 330, 436 P.2d 330].) Section 657 provides the order *"may* contain the specification of reasons." (Italics added.) There is no statutory obligation that the order in fact contain the reasons. The specification of reasons is totally distinct from the order.

As we read section 657 of the Code of Civil Procedure, the statutory period of 10 days may be in addition to the period provided for in section 660, but the 10-day period commences to run with the filing of the order granting the motion for new trial. If the trial judge is allowed the full 60-day period in which to make his order, and if the order need not contain the specification of reasons, the trial judge should be allowed not more than 10 days after the order was filed in which to clearly set forth his reasons in writing. If it were the intent of the sections to include the 10 days within the 60-day period, the sections could easily so have provided.

## III

Did the trial court commit error by granting the motion for a new trial?

On the morning of trial, before a jury was selected, defendants moved to file an amended answer setting forth the defense of contributory negligence. The pretrial conference order did not contain the issue of contributory negligence. The trial judge thought he abused his discretion in allowing the amendment, because the issue was not contained in the pretrial conference order.

The trial judge does have great discretion in allowing an amendment to any pleading. (Code Civ. Proc., §§ 473, 576; 2 Witkin, Cal. Procedure (1954) Pleading, § 594, pp. 1605-1607.) Normally the pretrial conference order will control, as against inconsistent pleadings. (Cal. Rules of Court, rule 216.) In the interests of justice, however, there may be amendment to the order (Cal. Rules of Court, rule 216). (See *Schramko* v. *Montgomery Ward & Co.,* 223 Cal.App.2d 771 [36 Cal.Rptr. 136].) Judgments will be permitted to stand, if supported by amended pleadings, although unsupported by a pretrial conference order. (See *Posz* v. *Burchell,* 209 Cal.App.2d 324, 335 [25 Cal.Rptr. 896].) The trial judge did not abuse his discretion by allowing the amendment to the answer.

The trial court also gave the following reason to support its order granting the motion for a new trial: "The Court instructed on contributory negligence. This also was error. There was no evidence of contributory negligence, even if it had been a valid issue."[1]

A party has a right to instructions on his theory of the case, if it is reasonable and finds support in the pleadings and evidence or any inference which may properly be drawn from the evidence. (See 2 Witkin, Cal. Procedure (1954) Trial, § 52, p. 1780, and cases cited therein.) Here there was evidence which may have indicated contributory negligence on the part of plaintiff. There was evidence plaintiff did not even examine confirmation slips sent her. Plaintiff herself admitted she usually did not examine the confirmation slips. She stated she did not always open the monthly statements sent her. Thus there was sufficient evidence to require an instruction on the issue of contributory negligence.

The trial court stated a third reason to support its order granting the motion for a new trial:

---

[1]No issue is raised as to the contents of the instruction, only the propriety of giving the instruction.

"After weighing the evidence, the Court is convinced from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict, to wit: against defendant.

"The account of plaintiff with defendant was handled as a discretionary account without any written authorization therefor. During the trading relationship, the defendant sought from plaintiff a written authorization for a discretionary account, which plaintiff refused to execute in the broad form requested.

"Defendant's employee put plaintiff in margin accounts, short accounts and puts and calls. Telephone calls between plaintiff and the defendant never exceeded four a month, but there were frequently daily transactions, some in the same securities. The margin account had become over-extended, so defendant's employee arranged for plaintiff to borrow on her privately held securities from a bank of his selection, to keep the margin account active. The types of trading, especially 'puts and calls', are only for a sophisticated trader. But defendant led a young college graduate, whose only knowledge of business and stock-trading came from the classroom, into this labyrinth of transactions, which only profited the defendant through the commissions earned. There could not have been any ratification of transactions which plaintiff did not and could not understand. Defendant's employee testified she asked many questions of him over the telephone. Contrary to this witness' interpretation, this showed ignorance and confusion, rather than understanding.

"The Rules of the S.E.C. and the Stock Exchange require approval of customers' transactions by a partner. This was never done in this account. This is a breach of trust and confidence, and deprived plaintiff of a protection assured her by law."

On appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. (*Treber* v. *Superior Court, supra* at p. 132; *Mercer* v. *Perez, supra* at p. 112.) The order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict, unless such ground is stated in the order granting the motion. (Code Civ. Proc., § 657.) (See *Scala* v. *Jerry Witt & Sons, Inc.,* 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864].) The order did comply with this requirement. On appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground if

there is no substantial basis in the record for any of such reasons. (Code Civ. Proc., § 657.)

If the trial court believed a different verdict should have been reached, implicitly he believed there was insufficient evidence to support the verdict. In this third reason to support the order, the trial court specified where he thought the evidence was lacking.

Essentially, the trial judge believed the plaintiff was ignorant of the true state of affairs. Plaintiff did pay out $48,922.69 in interest and commission charges, yet she realized a net trading profit of only $4,070.66. In light of such evidence, there was not a "manifest and unmistakable abuse of discretion" in granting the motion for a new trial.

There was evidence defendants never obtained written authorization from plaintiff to exercise discretionary authority. Rule 513 of the New York Stock Exchange would have required written authorization for a discretionary account. Although approximately 570 transactions were made in plaintiff's accounts during the period it was handled by defendants, few were initiated by plaintiff. Although the trial court may have been in error where it stated that never were there more than four telephone calls in one month, such error would be virtually harmless in light of the other evidence to support the order.

It cannot be said there was "no substantial basis in the record" to support the order. Furthermore, all presumptions are in favor of the order as against the verdict. On this third reason, the order is affirmed.

## IV

Appellants contend Code of Civil Procedure section 657 is unconstitutional.

■ It has been held judicial reweighing of the evidence is permissible under the state Constitution. (*Estate of Bainbridge,* 169 Cal. 166, 169 [146 P. 427].) An appellate court must follow the decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal. 2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Orange County Water District* v. *City of Riverside,* 173 Cal.App.2d 137, 165-166 [343 P.2d 450].) Appellants cite no case holding such a judicial reweighing violates the United States Constitution.

## V

Respondent contends that the trial court improperly instructed the jury on the defense of ratification.

The trial court gave the following instruction: "The customer's capacity to understand must be taken into consideration by a broker-dealer in informing the customer with respect to transactions in her account. The broker-dealer is chargeable with notice of the customer's capacity, and if you find that the broker-dealer is aware, or should be aware of her lack of capacity to understand the transactions in her account, the non-action of the customer following the receipt of confirmation notices or monthly statements of account is not ratification of the broker-dealer's acts by the customer.

"On the other hand, if you find that the customer did have the capacity to understand the transactions in her account and that after she received confirmation and statements she did not make any objections to them, she ratified them and approved of the broker-dealer's acts."

On an annual basis, the earnings record of the account did not appear "particularly bad," but those securities which declined substantially in value simply were kept in the account and not sold. The losses in these items (19 separate securities having a cost value of $115,781.86 and a liquidation value of $54,291.70) did not appear in any statement, confirmation slip or accounting provided by appellants.

Regardless of capacity to understand transactions, one must have notice of those transactions before he can be held to assent to them. (*Twomey* v. *Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, at p. 729 [69 Cal.Rptr. 222]; see also Civ. Code, § 2310; 1 Witkin, Summary of Cal. Law (1960) Agency and Employment, § 46, p. 423.)

The instruction was improper, not because of what it stated, but because of what it failed to state. The instruction failed to state respondent must have been found to have had notice of all the transactions, not merely those appearing on the various statements, before she could be found to have ratified the activities of appellants.

The order granting the new trial is affirmed.

The appeal from the judgment is dismissed.

Plaintiff to recover her costs on appeal.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied July 21, 1971, and appellants' petition for a hearing by the Supreme Court was denied August 18, 1971.