[Civ. No. 42520. Second Dist., Div. Five. Nov. 19, 1974.]

RICHARD A. GALINDO, Plaintiff and Respondent, v.
PARTENREEDEREI M.S. PARMA, Defendant and Appellant.

## COUNSEL

Cooper, White & Cooper, James J. Brosnahan and Neil L. Shapiro for Defendant and Appellant.

Olney, Levy, Kaplan & Tenner and Jack Tenner for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Plaintiff Galindo brought this action for personal injuries received while working as a longshoreman aboard a vessel owned by defendant. Defendant appeals from an order granting plaintiff's motion for a new trial.

On June 28, 1971, plaintiff was injured while working aboard defendant's vessel. Plaintiff was unloading boxes of bananas from the ship. The boxes were unloaded by means of a conveyor belt which extended through the hatches of the four decks where the bananas were stored. Plaintiff was working on the "A" deck, which was above the "B," "C," and "D" decks. The boxes stored on the "A" deck were lifted onto a "gravity," a device with rollers on it. Plaintiff's job was to lift the boxes, which weighed about 45 pounds each, from the gravity and to place them in the conveyor belt.

The conveyor belt consisted of pockets and bars. The safest way of loading a box onto the conveyor belt so that it did not fall out was to rest the box on the bar and let it lean into the pocket. However, it was thought that this method bruised the fruit, and the workers were instructed instead to set the boxes into the pockets. The workers were required to follow instructions. This was not a safe method because the boxes would fall out of the conveyor. On the morning of the accident, the boxes were being unsafely loaded in the lower decks and were falling out of the conveyor.

A box which was pushed toward plaintiff on the gravity fell off the gravity. Plaintiff stooped to pick it up. As he did so, a box coming from below on the conveyor fell off, striking plaintiff in the back and knocking him down.

Plaintiff was hospitalized, and on August 9, 1971, Dr. Seletz performed a lumbar laminectomy to remove from plaintiff's back a portion of a disk which was protruding against nerve roots. Plaintiff is still unable to sit, stand or lie in any one position for a prolonged period of time without pain. Plaintiff does not think that he could go back to longshore work. In the opinion of Dr. Seletz, plaintiff cannot return to longshore work or do heavy manual labor involving heavy lifting or climbing ladders. In the opinion of Dr. Rhorer, defendant's expert, plaintiff could do light longshore work such as driving a jitney, a job which is sometimes given to older or injured longshoremen.

Plaintiff had suffered previous injuries to his back. In 1967 he was involved in an automobile accident and suffered a minor low-back injury.

In 1969, while working aboard a vessel, his glove got caught in a winch hook and he was lifted into the air and dropped onto a steel deck. He was hospitalized one week and off work for four months, but subsequently felt fine and returned to work. In January of 1971, he was injured in a fall from a ladder aboard another vessel. He was not hospitalized and returned to work February 24.

In the opinion of Dr. Seletz, plaintiff's condition is due 10 percent to the 1969 injury, 15 percent to the January 1971 injury, and 75 percent to the June 1971 injury. On the other hand, Dr. Rhorer apportioned two-thirds of plaintiff's condition to the 1969 injury, and one-sixth each to the January 1971 and June 1971 accidents.

Plaintiff is 24 years old and did not complete the twelfth grade of high school. He has always worked as a manual laborer, and as a longshoreman since he was 17 or 18. Plaintiff plays the guitar, and in the past he has given guitar lessons and played in a combo for pay. However, he is unable to teach advanced students and had to drop out of his music studies at Harbor College. He can no longer hold a heavy guitar.

Dr. Seletz' bill was $2,656 and plaintiff's hospital expenses were $2,213. An economist testified that assuming plaintiff would have become a class A longshoreman in 1974 and continued working had the accident not occurred, and that in plaintiff's present condition he will be able to work at an alternative occupation at the federal minimum wage, the present value of plaintiff's lost earnings is approximately $270,000.

The cause was submitted to the jury based on defendant's liability for the unseaworthiness of its vessel. The defense was contributory negligence. Under maritime law the doctrine of comparative negligence is applicable and the jury was instructed that the amount of damages to which the plaintiff would otherwise be entitled should be reduced in proportion to plaintiff's own negligence, unless plaintiff's negligence was the sole proximate cause of the accident, in which case the verdict should be in favor of the defendant. The jury was also instructed not to award damages to plaintiff for any injury or condition not proximately caused by the instant accident, and that the jury must determine what proportion of plaintiff's present condition or disability is attributable to each of the accidents involving plaintiff's back.

On December 12, 1972, the jury returned a general verdict for plaintiff in the amount of $7,300.

## Motion for New Trial

On December 19, 1972, plaintiff filed notice of intention to move for new trial, listing the following grounds: (1) Irregularity in proceedings of the court, by which plaintiff was prevented from having a fair trial; (2) Irregularity in proceedings of the jury, by which plaintiff was prevented from having a fair trial; (3) Irregularity in proceedings of the adverse parties, by which plaintiff was prevented from having a fair trial; (4) Orders of the court and abuses of discretion of the court by which plaintiff was prevented from having a fair trial; (5) Misconduct of the jury; (6) Accident or surprise, which ordinary prudence could not have guarded against; (7) Newly discovered evidence material to plaintiff which he could not with reasonable diligence have discovered and produced at the trial; (8) Insufficiency of evidence to justify the verdict; and (9) The verdict is against law. The notice did not specifically allege inadequate damages as a ground for new trial. On December 22, 1972, plaintiff's counsel filed a declaration in support of motion for new trial, stating in part "[t]hat there is insufficiency of evidence in the record to support the verdict of the jury in favor of defendant [*sic*] in the amount of $7,300.00." Counsel reviewed the evidence, claiming that plaintiff could never again do longshoreman work or physical labor, that the costs of the hospital approximated $5,000; that plaintiff's loss of wages on a minimum basis exceeds $8,000, and concluding that the jury was completely unjustified in arriving at the verdict in the amount of $7,300.

On January 4, 1973, counsel for defendant submitted a declaration in opposition to the motion for new trial, contending that the verdict in the amount of $7,300 was proper. Counsel contended that the issue of future wage loss was seriously contested; that plaintiff could return to work; that because of the instructions on comparative negligence the jury had wide latitude in determining damages based upon comparative negligence; that the jury had wide latitude in reducing the damages by reason of apportioning plaintiff's condition to the earlier accidents; and that the special medical damages and lost wages issues had also been contested. Counsel for defendant also took the position in a memorandum of points and authorities that a new trial could not be granted on the ground of inadequate damages because plaintiff's notice of intention to move for new trial had not specifically referred to that ground.

On February 6, 1973, the court granted plaintiff's motion for new trial on the ground that the amount of damages was inadequate. The court stated its reasons for granting the motion as follows: ". . . Considering Plaintiff's age, the surgery he has undergone, the residuals he is

now afflicted with at his age and his training and educational background, which heretofore limited him to the production of a livelihood by the sweat of his back, despite his present aspirations to be a music teacher, for which occupation he has no training or education, this $7,300 verdict is inadequate and unjust. We recognize the previous accident history, for which Defendant has no responsibility, but the glaring fact cannot be overlooked that he was, to all intents and purposes, and notwithstanding that previous history, working as a longshoreman, doing what all longshoremen do, on the date in question here. This he can no longer do. [¶] This Court cannot find in the evidence, as distinguished from speculation or argument, sufficient foundation for the suggestion that it was Plaintiff's own negligence that caused the box to fall on him when he was bending over to pick up another box or that he was aware or should have been that the offending box was improperly loaded or conveyed. It would fly in the face of reason to believe he would then expose himself needlessly to the hazard. (On the other hand, if the size of this award was, in fact dictated by an allocation of any substantial amount to his negligence [in placing the offending box], it is then also an unjust award because in that case, this Court would see no negligence on the part of the defendant contributing to this accident and the verdict should have been for defendant. This comment is not grounds or reason for decision since defendant has not moved for new trial, but is made merely to highlight the injustice of the award.) [¶] We consider the estimates of apportionment of Dr. Rhorer and Dr. Seletz to be in some measure influenced by their adversary positions in the case and their versions of the accident history, which estimates each is properly entitled to make in good faith. Uninfluenced by any adversary considerations, this Court believes the true estimate figure must lie substantially between those two. Reflecting all of the foregoing reasons as its decision, we are convinced that since liability was found, the award is inadequate, any allocation to Plaintiff on the basis of comparative negligence being unsupported, and a new trial should be granted on all of the issues."

With respect to the adequacy of the notice of intention to move for a new trial, the court held that the declaration of plaintiff's counsel submitted on December 19, 1972, was specific enough to alert counsel and the court that the thrust of the application and the complained grievance was inadequate damages, and that the declaration had the effect of amending the notice of intention to move for a new trial to include the ground of inadequate damages.

As to all other grounds, the motion for new trial was denied.

## CONTENTIONS

Defendant contends (1) that the court had no power to grant a new trial on the issue of inadequate damages because this ground was not specifically included in plaintiff's notice of intention to move for new trial and (2) that the trial court abused its discretion in granting the motion for new trial and did not adequately specify its reasons. We find no merit to these contentions and therefore affirm the order.

## SUFFICIENCY OF THE NOTICE

Defendant contends that under Code of Civil Procedure section 659 the notice of intention to move for new trial must designate the grounds upon which the motion will be made, and that the trial court is without jurisdiction to grant a motion on any ground other than those specified in the notice. It contends that, whereas formerly the issue of inadequate damages could be raised on a motion for new trial on the ground of insufficiency of the evidence to justify the verdict (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 42, pp. 3618-3619), the 1967 amendment to section 657 made excessive or inadequate damages a separate ground for new trial, and that in order to effectuate the purpose of the amendment the issue of inadequate damages must be specified in the notice of intention to move for new trial. Defendant therefore contends that the trial court was without power to grant a new trial on the issue of inadequate damages in the present case because that ground was not specified in the original notice.

This contention overlooks the peculiar context in which the issue arose in this case. Because this case was based on maritime law the doctrine of comparative negligence applied. Under that doctrine the jury was empowered to reduce the damages the plaintiff otherwise would be entitled to in proportion to plaintiff's contributory negligence for the accident. Counsel for the defendant himself stated in his memorandum in opposition to the motion for new trial, filed January 31, 1973, that because of this doctrine the liability and damages issues in this case are inextricably interwoven. Furthermore, counsel for defendant was in no way misled by the fact that the notice of intention to move for new trial referred to insufficiency of the evidence rather than inadequate damages. Since plaintiff had won, it would be hard to construe an allegation of insufficiency of the evidence as anything other than a complaint of inadequate damages. The declaration of plaintiff's attorney, which was submitted three days later and within the time for notice of motion for new trial, made clear that the issue of inadequate damages was being raised. Shortly thereafter counsel for defendant submitted his own declaration in opposition to the motion in

which he thoroughly discussed the issue of whether the $7,300 damage figure was a proper one.

In the circumstances of this case, we think the trial court properly held that the notice of intention to move for new trial and the declaration in support thereof adequately raised the issue of inadequate damages. (See *Stevens* v. *Parke, Davis & Co.,* 9 Cal.3d 51, 59-60, fn. 10 [107 Cal. Rptr. 45, 507 P.2d 653].)

## SPECIFICATION OF REASONS

■ We find no merit to defendant's contention that the trial court failed adequately to specify the reasons for its order. (Code Civ. Proc., § 657.) ■ The order satisfies the two purposes of the requirement: (1) To encourage careful reflection by the trial judge and (2) to bring the appellant out of the dark as to which aspect of the trial to defend. (*Mercer* v. *Perez,* 68 Cal.2d 104, 112-113 [65 Cal.Rptr. 315, 436 P.2d 315].) The court need only briefly recite the respects in which it finds the evidence inadequate. (*Id.* at p. 116.) ■ Here the court's order adequately draws the appellant's attention to plaintiff's work history as a longshoreman, his inability to continue that occupation, his training for alternative occupations, the estimates apportioning the injuries and the issue of the alleged negligence of plaintiff.

## ABUSE OF DISCRETION

■ Defendant contends that the trial court abused its discretion in granting the motion for new trial. This contention is without merit. ■ In considering a motion for new trial, the trial judge is entitled to reweigh the evidence, consider the credibility of the witnesses and draw reasonable inferences contrary to those accepted by the jury. (*Martinez* v. *Harris,* 273 Cal.App.2d 385, 397-398 [78 Cal.Rptr. 325].) ■ The question is not whether there is substantial evidence to support the jury's verdict but whether the record supports the trial court's determination, after weighing the evidence, the jury should have reached a different verdict. (*Russell* v. *Nelson,* 1 Cal.App.3d 919, 922 [82 Cal.Rptr. 221].) On appeal all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless the manifest abuse of discretion appears. (*Fortenberry* v. *Weber,* 18 Cal.App.3d 213, 223 [95 Cal.Rptr. 834].) It has been said that there cannot be an abuse of discretion by the trial court where the evidence is in conflict and a verdict for the moving party could have been reached under the theory

expressed in the order for a new trial. (*Jones* v. *Citrus Motors Ontario, Inc.*, 8 Cal.3d 706, 711 [106 Cal.Rptr. 28, 505 P.2d 220]; *Martinez* v. *Harris, supra.*)

In the instant case the trial court, by believing certain witnesses and evidence and by drawing its own reasonable inferences, could reasonably conclude that the jury award was wrong. Defendant argues that other inferences may be drawn but this merely goes to the weight of the evidence. It cannot be said that there is no substantial evidence to support the trial court's conclusion that the jury reached the wrong result.

Defendant argues that there is no evidence plaintiff's residual back problems prevent his working as a longshoreman or that plaintiff is without training or education to be a music teacher. These arguments are without merit. Dr. Seletz testified that plaintiff should do no heavy labor, climbing ladders or lifting heavy boxes, and that plaintiff cannot do longshore work again.[1]

Defendant argues that with further training or education there are many good jobs appellant could perform. The trial court was entitled to draw other reasonable inferences, however, from the fact that appellant had never completed high school and had always been a manual laborer. The trial court could reasonably believe plaintiff lacked the training and education for a musical career. Plaintiff testified to difficulties he had encountered trying to prepare for a musical career: he "had to" drop out of his music studies at Harbor College, he could teach beginners but not advanced students, he could not hold a heavy guitar, his past teaching and playing had been on an informal basis, and he had lost his "contacts" in the music business. Defendant's rehabilitation expert had not personally interviewed plaintiff, and some of his suggested alternatives apparently failed to take into account plaintiff's difficulty in sitting or standing in any one position for a long time.

Defendant argues that plaintiff failed to take proper precautions for his own safety, and that plaintiff himself must have improperly placed the box on the conveyor. However, plaintiff and David Chacon testified only that it was "sometimes" true a box which was improperly loaded at a lower deck would "flip out" onto the deck due to overhang when it came through the hatch. Plaintiff testified he looked at the conveyor before he

---

[1]When Dr. Seletz signed certain forms for plaintiff indicating a date when plaintiff would be able to return to work, he did so only because the form gave him no choice.

stooped down and there were no overhanging boxes. Both plaintiff and Chacon testified the box "had to come from below." ·

Even if it were believed that plaintiff himself placed on the conveyor the box which struck him, he testified he was loading boxes in the manner his superiors had instructed him. There was considerable evidence that the workers were required to use an unsafe method because the safest method bruised the fruit. The "stop" buttons by which a worker could stop the conveyor did not always work and were not always located where a worker could reach them. The trial court could properly conclude that plaintiff was not negligent.

Defendant contends plaintiff's condition pre-existed the June 28, 1971, accident. Defendant contends plaintiff was already disabled as indicated by the reduced hours he worked as a longshoreman in 1969 and 1970. Defendant further contends that plaintiff must have had a herniated disk prior to the accident because an electromyogram test conducted· July 5, 1971, seven days after the accident, showed a marked change in nerve root function which normally does not show up until 18 days after an injury.

However, Dr. Seletz testified that plaintiff's prior symptoms did not indicate major nerve damage. Although plaintiff did not work full time in 1969 and 1970, he was nevertheless doing longshore work and testified that he actually felt good and able to work. Dr. Seletz pointed out that plaintiff simply could not have gone back to work as he did after the January 1971 accident if he had sustained a protrusion of the disk with continual nerve root pressure. From this the trial court was justified in drawing the common sense inference that "the glaring fact cannot be overlooked that he was, to all intents and purposes, and notwithstanding that previous history, working as a longshoreman, doing what all longshoremen do, on the date in question here. This he can no longer do."

Defendant's expert, Dr. Rhorer, admitted that without the June 1971 accident plaintiff would not have required surgery and could have continued his activity.

The trial court's further comment that the true apportionment as to prior injuries probably lay between the starkly contrasting estimates of Drs. Seletz and Rhorer was within the court's province to weigh the credibility of witnesses and to resolve conflicts in the evidence.

The trial court did not abuse its discretion in granting the motion for new trial.

The order is affirmed.

Kaus, P. J., and Stephens, J., concurred.